CHARLOTTE REMINGTON HATTON *vs.* HOWARD BRAIDING
COMPANY *et al.*

JUNE 29, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, and Sweeney, JJ.

*(1) Equity. Laches.*

Laches is not mere delay but delay that works a disadvantage to another.

*(2) Equity. Estoppel.*

There can be no estoppel unless the one in whose favor estoppel is invoked
or one through whom he claims title so acted in reliance upon representations
by word or conduct that he will be prejudiced if it is permitted to be shown
that the representations were untrue.

*(3) Equity. Estoppel. Negligence. Corporations.*

Stock was bought by a corporation and transferred to the name of X. To
obtain part of the purchase price of the stock, the company's note secured
by the stock was discounted. Dividends received by X. until his death
were turned over to the corporation. From the death of X. dividends were
received by complainant executrix who assuming the stock belonged to the
estate divided them equally between herself and her brother, the legatees
under the will. For some years after the death of X. the stock was carried
on the books of the corporation as assets of the corporation but later on the
assumption the stock belonged to the estate of X. it was written off the
books. Still later the corporation believing the stock to belong to it, paid
the loan and obtained possession of the stock. Complainant in her in-
dividual capacity owned 43 per cent of the capital stock of the corporation
and before the corporation took over the stock sold her interest for $10,000.
The value of the stock in question was $18,000. On bill by executrix to
recover the stock.

*Held,* that complainant as executrix had not been prejudiced by the conduct
of the corporation except as to the dividends which she had been permitted
to receive but as to the stock she had suffered no harm through being led
to believe that it was a part of the estate; that neither laches or estoppel
was available to her and she was not entitled in that capacity to relief.

*Held,* further, that as to complainant in her individual capacity the corpora-
tion was guilty of culpable negligence in not knowing that it owned the stock
and in representing to complainant that the stock was not the property of
the corporation and in inducing her to sell to it her interest in the company
when the corporation knew that she believed in reliance upon its repre-
sentations and conduct that the equitable title to one-half of the stock in
question was in herself.

*(4) Equity Pleading. Suit by Legatee.*

*Held,* further, that it appearing that the assets of the estate had been dis-
tributed, and there being no proof of any debts against the estate, com-

plainant could maintain the bill in her individual capacity, and that she was entitled to a decree against respondent corporation for delivery of one-half of the stock in question and for an accounting for one-half of all cash and stock dividends, etc., received on the stock.

(5)  *Equity.    Estoppel.    Change of Position.    Receipt of Money Under Mistake of Fact.*

*Held,* further, that the corporation was also estopped from asserting title to the dividends received by complainant on her half of the stock.

*Held,* further, that as to the dividends which she as executrix had distributed to the other legatee, as she the executrix lived in California and the legatee in this State, and the representative of the legatee who was mentally incapacitated was antagonistic to complainant, the position of the executrix had been inalterably changed for the worse and the corporation was estopped also to assert title to such dividends.

(6)  *Equity.    Estoppel.    Deceit.*

Relief in equity is not always dependent on ability to prove deceit but where one so acts or speaks that the natural consequence of his words and conduct will be to influence another to change his condition, he is chargeable with an intent to induce the other to believe him and to act upon that belief.

(7)  *Equity.    False Representations.    Ignorance of Fact.    Negligence.*

Where one is seeking not only to cast a loss upon an innocent party but to retain a substantial gain obtained in the transaction from the innocent party by false representations and the excuse is that because of ignorance due to negligence the respondent did not know the representations were false, such conduct cannot receive the approval of a court of equity.

(8)  *Equitable Estoppel.*

Where one would have been barred by equitable estoppel from maintaining a suit to recover property; after wrongfully obtaining possession of the property it is in no better position to maintain its title.

(9)  *Equity.    Receipt of Money Under Mistake of Fact.    Burden of Proof.*

The burden is upon a person who has under a mistake of fact received money which was not due him to prove that it will be inequitable to require restitution.

BILL IN EQUITY and cross bill.  Heard on appeal of complainant and appeal sustained and decree reversed.

RATHBUN, J.  This is a bill in equity brought by Charlotte R. Hatton, individually and as executrix of the will of Charles N. Howard, to compel restitution of shares of stock which were standing in the name of said Charles N. Howard at the time of his decease.  The cause is before us on the complainant's appeal from a decree of the Superior Court

dismissing the bill and requiring the complainant to account to the respondent company, in accordance with the prayer of the cross bill, for dividends received on said stock by the complainant in her said capacity as executrix.

Charles N. Howard, in his lifetime, was the principal stockholder and directed the affairs of the Howard Braiding Company. He established the enterprise and for several years owned all of the stock in the corporation, except a few shares held by the complainant and a few other shares held by respondent Charles H. Remington. On September 27, 1910, said Howard deceased. He left a will by which he gave his estate in equal shares to his nephew and niece, said Remington and the complainant. The complainant was appointed executrix of the will and as executrix, after paying the testator's debts, divided between her brother, said Remington, and herself individually the remainder of the assets, including the stock in the Braiding Company, which came into her actual possession. Soon after her appointment as executrix she learned that five shares of stock in the Standard Oil Company of New Jersey stood on the books of said company in the name of said Howard, the testator. The certificate representing said five shares was held by a bank as collateral to secure a loan to the Howard Braiding Company. Before the loan was paid an order of dissolution was entered by a Federal court against said oil company and as a result of said order the bank which held said five shares as collateral received in lieu thereof a number of shares in the various companies which had formerly been merged into the Standard Oil trust. The new shares were issued to the estate of Charles N. Howard and indorsed in blank by the complainant as executrix and were held by said bank as collateral for succeeding loans until July, 1923, when the treasurer of the Braiding Company paid the final loan, received all of said shares of stock held as collateral and caused them to be transferred to the Howard Braiding Company upon the books of their respective companies. The complainant is seeking to recover said stock and the

cash and stock dividends on the same which have been received by the Braiding Company.

From the death of the testator on September 27, 1910, until July, 1923, when the stock was transferred to the Howard Braiding Company, all dividends on said five shares and on the shares issued to said estate as a result of said order of dissolution were received by the complainant as executrix of the will of said Howard. Having no reason for suspecting that said stock was not a part of the testator's estate, she, as executrix, divided all of said dividends between herself and her brother. From September 17, 1906, until December 31, 1916, said five shares were carried on the books of the Braiding Company as assets of the corporation and included in each financial statement. On the latter date Mr. Johnson, the new treasurer of said company, having been told by the bookkeeper and also by Mrs. Pearl M. T. Remington, wife of said Charles H. Remington, who was at that time a stockholder and director in the Braiding Company, that said shares were not owned by the corporation but were a part of the estate of said Charles N. Howard, directed that said stock be written off of the books of the corporation, which was done, and the stock was no longer included as an item in the financial statements of the company. Sometime in the year 1922 the books of the Braiding Company were audited. As a result of the audit the new treasurer discovered evidence which convinced him that the stock in question was owned by the Braiding Company and not by the estate of said Howard, and he thereafter obtained possession of the stock by paying the loan for which the stock was collateral.

It appears that on September 17, 1906, said five shares were owned by said Charles H. Remington and that on said date he sold said shares for $3,020, the market value at that time; that the purchase price was paid to Remington by the Braiding Company and that the stock, instead of being transferred to said company, was transferred to said Charles N. Howard. To obtain a part of the purchase price of the

stock the Braiding Company's note, secured by said stock, was discounted at a bank. It appears from the books of the Braiding Company that all dividends on said five shares received by said Howard from September 17, 1906, the date of sale, until his death were by him turned over to the Braiding Company. The books of said company contain in the handwriting of said Charles H. Remington and said Howard entries showing that the Braiding Company paid to Remington the full purchase price for said stock and that the tiansaction was a sale to the Braiding Company.

The trial court found that the Braiding Company paid for said five shares of stock and became the equitable owner thereof at the time of the purchase, September 17, 1906, when the transfer was made to Charles N. Howard, and the evidence supports this finding.

The complainant contends that the respondent company is now barred by laches and estoppel from asserting ownership to the stock. Laches in legal significance is not mere delay, but delay that works a disadvantage to another. *Chase* v. *Chase*, 20 R. I. 202, and it is elementary that there can be no estoppel unless the one in whose favor estoppel is invoked, or one through whom he claims title, so acted in reliance upon representations by word or conduct that he will be prejudiced if it is permitted to be shown that the representations were untrue. It does not appear that the complainant, as executrix, has, by reason of the conduct or representations of the Braiding Company, been prejudiced except as to the dividends which she has been permitted to receive and distribute. This prejudice may be urged in defense of the cross bill to recover the dividends but not in support of the main bill to obtain the stock. As to the stock, the complainant, as executrix, has suffered no harm by reason of being permitted to collect the dividends and being led to believe that the stock was a part of the testator's estate. We must therefore conclude that neither laches nor estoppel is available to the complainant in her capacity of executrix and that in her said capacity she is not entitled to relief.

. We .will next consider the complainant's standing as an individual. If the complainant in her individual capacity is entitled to no relief she has suffered a very substantial loss by reason of relying upon the Braiding Company's representations that it did not own the stock. It was stated in argument and not contradicted that the value of said stock is approximately $18,000. Mrs. Hatton, the complainant, owned forty-three per cent of the stock of the Howard Braiding Company and on or about April 1, 1920, sold all of of said stock to the Howard Braiding Company for $10,000. In fixing a price for said stock, the seller and purchaser both acted on the assumption that the stock in question was not an asset of the Howard Braiding Company. If said stock was at the time of the sale an asset of the Howard Braiding Company the intrinsic value of Mrs. Hatton's stock in said company was greater, to the extent of forty-three per cent of the value of the stock in question, than the value of her stock in the Braiding Company would have been if the stock in question was not an asset of the Howard Braiding Company.

It is not contended that the officers of the Braiding Company were guilty of actual fraud in purchasing Mrs. Hatton's stock in said company but the result to her is the same as it would have been if the said officers had intended to practice deceit. Relief is not always dependent upon ability to prove deceit. Many of the various species of estoppel have been frequently applied where there was not only no intention to deceive but no intention to induce anyone to act. Judge STORRS in *Preston* v. *Mann et al.*, 25 Conn. at 128, states as follows: "In Connecticut, and in fact in the courts of this country, and of England generally, the proposition of Lord Denman, (*Pickard* v. *Sears*, 6 Adol. & El., 469,) seems to have met with approbation. 'Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring

against the latter a different state of things, as existing at the same time.'  The word 'wilfully', as used in this connection, is not to be taken in the limited sense of the term *maliciously*, or of the term *fraudulently;* nor does it of necessity imply an active desire to produce a particular impression, or to induce a particular line of conduct.  Whatever the motive may be, if one so acts or speaks, that the natural consequence of his words and conduct will be to influence another to change his condition, he is legally chargeable with an intent, a wilfull design, to induce the other to believe him, and to act upon that belief, if such proves to be the actual result.  It is enough that 'a reasonable man in the situation of the other would believe that it was meant that he should act upon it.' "

It is contended by the Braiding Company that it acted in ignorance of the fact that the Company owned said five shares, and that said company ought not to be estopped because of representations or conduct based upon such mistake of fact.  In *Curtis* v. *Connly,* 257 U. S. 260, Mr. Justice HOLMES said:  "The bank of course must be charged with knowledge of what appeared upon its books."  If there is any question as 'to the soundness of this rule when applied to the case before us it can not be doubted that the Braiding Company was guilty of culpable negligence in not knowing that said company purchased and owned said five shares of stock and in representing to the complainant that the oil stock was not the property of the respondent company.  Said company in dealing with the complainant owed to her a duty not to mislead her to her injury.  2 Pomroy's Eq. § 809, contains the following statements:  "The rule has sometimes been stated as though it were universal, that an actual knowledge of the truth is always indispensable. It is, however, subject to so many restrictions and limitations as to lose its character of universality.  It applies in its full force only in cases where the conduct creating the estoppel consists of silence or acquiescence.  It does not

apply where the party, although ignorant or mistaken as to the real facts, was in such a position that he *ought* to have known them, so that knowledge will be imputed to him. In such case, ignorance or mistake will not prevent an estoppel. Nor does the rule apply to a party who has not simply acquiesced, but who has actively interfered by acts or words, and whose affirmative conduct has thus misled another. Finally, the rule does not apply, even in cases of mere acquiescence, when the ignorance of the real facts was occasioned by culpable negligence." The rule as stated is amply supported by the authorities there cited. The Braiding Company not only represented to the complainant that it did not own the stock in question but actually induced her to sell to the Braiding Company itself forty-three per cent of the stock of that company when said company knew that she believed, in reliance upon the corporation's representations and conduct, that the equitable title to the oil stock was not in the corporation but that the equitable title to one-half of said stock was in herself.

When the owner of money or other personal property pays, delivers or abandons the same to another under a mutual mistake of fact that the person to whom the payment, delivery or abandonment is made is the owner, there can be no recovery when the payment, delivery or abandonment has caused such a change in the position of the person receiving that it would be unjust to require him to make restitution. Equitable estoppel forbids the owner to set up his title because he has so conducted himself that an assertion of his title is contrary to equity and good conscience. 21 R. C. L. p. 170; *Jones* v. *Subera et al.*, 25 So. Dak. 223; *Pool* v. *Harrison*, 18 Ala. 514. In many cases the answer to the question whether it was unjust to compel restitution has been determined in favor of the party which was the less negligent. The rule in this country, except perhaps in New York, is that an irrevocable change of position, due to the mistake, by the person receiving the money or other

property will prevent a recovery when the parties were equally to blame for the mistake under which the delivery or abandonment was made or equally innocent in respect thereto. See cases cited in L. R. A. 1917, E. 353; Woodward, *Quasi* Contracts, § 25. However, in cases of this nature it is universally conceded where the proximate cause of the mistake, which has induced the other party to act to his detriment, is the negligence of the owner, that equitable estoppel operates and prevents such negligent owner from setting up his title unless the injured party can be placed in *statu quo*. Woodward, *Quasi* Contracts, § 25; L. R. A. 1917, E. 350.

Of course, if the complainant knew that the stock in question was the property of the Braiding Company relief should be denied. See *Phetteplace* v. *Bucklin*, 18 R. I. 297. It is urged that she had an abundant opportunity to learn the truth and that she can not recover because of her negligence but as we have indicated above one-half of the stock, that is, the half which we may term Mrs. Hatton's stock, could not have been recovered from her even if her negligence had equaled that of the Braiding Company. She was for several years a director of the Braiding Company but it is clear that she knew very little concerning business affairs and that her activities in connection with the Braiding Company, apart from rendering some financial assistance after her uncle's death, were little, if any, more important than those of the ordinary dummy director. When the first dividend on the oil stock arrived after the testator's decease she sought the advice of a practicing attorney who was the general counsel of the Braiding Company and was advised by him that said stock was a part of the testator's estate. For thirteen years she as executrix received the dividends. When she sold her stock in the Braiding Company she had, for more than nine years, continuously received dividends on the stock in question. During this time, by order of the treasurer, said stock was written off of the books of the corporation. We do not think it was

unreasonable under the circumstances for her to believe that she was the owner of the equitable title of one-half of the stock in question and we are strongly of the opinion that the proximate cause of the unfortunate position in which the complainant finds herself was the gross negligence of the respondent company. It is a familiar maxim of equity that where one of two innocent persons must suffer, the loss must be borne by the one who caused it. The respondent company is seeking not only to cast a loss upon an innocent party but to retain a substantial gain obtained in the transaction from the innocent party by false repre-

(7) sentations, and the excuse is that because of ignorance due to negligence the respondent did not know that the representations were false. Such conduct cannot receive the approval of a court of equity.

It appears that said company would have been barred by equitable estoppel from maintaining a suit to recover that which we have termed Mrs. Hatton's half of the stock in

(8) question. After wrongfully obtaining possession of the stock said company is in no better position to maintain its title.

Having found that the complainant as executrix cannot maintain the bill because the mistake has caused her no harm in her representative capacity and that the Braiding Company should be estopped from asserting its title against the complainant in her individual capacity, the question arises

(4) whether a legatee can, under these circumstances, maintain in her own name a bill to recover property which the executrix lost long after it should have been delivered to the legatee. 23 C. J. 1193 contains the following statement: "While the personal representative is the proper person to proceed for the recovery of assets of the estate, it is held that the beneficiary may prosecute claims where the personal representative cannot or will not act". See also 23 C. J. 1001 and cases cited under notes 54 and 55. Suit is frequently brought by and in the name of a legatee in cases where the executor has misapplied the funds of the estate. See *Trull* v. *Trull*, 13 Allen 407. In some cases the suit has

been brought, by the legatee in the name of the executor but where it appears that the executor has no standing to recover the property; that the debts have been paid; that the legatee is entitled to the whole of the property recovered and that it would be the duty of the executor if he had recovered the property to immediately turn it over to the legatee, there appears to be no reason why the suit should not be brought by the legatee in his own name. The complainant was appointed executrix November 24, 1910. It appears that she, within a reasonable time after her appointment, distributed all assets of the estate, not required for the payment of debts and the expenses of administration, except the dividends which she thereafter received on the stock in question and that for many years thereafter she continued to distribute as assets the dividends on said stock. Under these circumstances there being no proof of any debts outstanding against the estate it will be presumed that there are none. See *Matter of Van Kleeck*, 95 Misc. 40; 158 N. Y. S. 539.

We hold that the bill may be maintained by the complainant individually and that she, in her individual capacity is entitled to a decree requiring the Howard Braiding Company to deliver up to her properly indorsed one-half of the stock in question and to account to her, in her said capacity, for one half of all cash and stock dividends—including rights sold or exercised—received on the stock in question.

We will now consider the cross bill. The state of facts which estopped the Braiding Company from asserting its title to Mrs. Hatton's half of the stock in question, also estoppes said company from asserting title to the dividends which she received on her half of said stock. Whether estoppel will prevent a recovery of the dividends which she as executrix distributed to Charles H. Remington depends upon the answer to the question whether the payment of the dividends to him has so altered her position that it will be inequitable to require her to account for said dividends to the Braiding Company.

The burden is upon a person, who has under a mistake of fact received money which was not due him, to prove that it (9) will be inequitable to require restitution—see *Phetteplace* v. *Bucklin*, 18 R. I. 297—but, in order to successfully rely upon estoppel, what effort must an executor show that he has made to obtain a repayment of the money which he has, due to a mistake, received and distributed?   In *Phetteplace* v. *Bucklin, supra,* a check was mailed to a legatee in payment of a legacy.   Unknown to the drawer the legacy had lapsed because of the death of the legatee without issue before the death of her would-be benefactor.   The check was received by the executor of the legatee, indorsed by him and collected and the proceeds distributed in accordance with the terms of her will.   The action was brought by the drawer of the check against the executor to recover the money.   The court was evidently of the opinion that the executor obtained the money unfairly.   The opinion contains the following language:   "We do not think it is enough to relieve the defendant from liability that he has paid the money to others, even though such payment was made before a repayment was demanded.   .   .   .   Again, assuming that the defendant had no such knowledge, but received the money innocently, he should at least show that he has made some effort to restore the money, or that such effort would be unavailing.   .   .   .   Until all reasonable efforts have been made by the defendant to get back the money and have proved unavailing, how can it be said that it would be inequitable to permit a recovery?"   In the case before us it is not contended that the executrix was guilty of any unfair conduct and the case to that extent may be distinguished from *Phetteplace* v. *Bucklin*.   We do not wish to be understood as saying that an executor, who has through a mistake innocently received and distributed money which did not belong to the estate, is never under any circumstances required, in answer to a suit against him by the owner to recover the money, to show that he has at least requested a restitution from persons to whom he

has paid the money. There are, however, respectable authorities which apparently so hold when the executor, as in the case before us, has in his hands no assets from which he can reimburse himself. *Grier* v. *Huston*, 8 Serg. & R. 402; *Beam* v. *Copeland*, 54 Ark. 70; *Pool* v. *Harrison*, 18 Ala. 514; *Jones* v. *Subera*, 25 So. Dak. 223. Provided the legatee is solvent, what must an executor do under such circumstances? Must he bear the expenses of an unsuccessful suit against the legatee before it can be said that the executor's position has been inalterably changed for the worse? We think not. The executrix, in the case before us, resides in California and the legatee in Rhode Island. Of what avail can it be for her to request Charles H. Remington to return the dividends paid to him and to his wife for his benefit? He has become mentally deficient and his business affairs are conducted by his wife, said Pearl M. T. Remington. For many years both have been large stockholders in the Braiding Company and Mrs. Remington was also for many years an officer and director in said company, and both respectively continued as such until the Braiding Company and the interests of herself and husband therein were merged in another corporation. As an officer and director of said company her position in this suit has been antagonistic to the complainant. If Mrs. Remington, acting for her husband, would, upon request, surrender the dividends in question why has she not paid them directly to the Braiding Company?

We think that Mrs. Hatton's position has been inalterably changed for the worse and that the Braiding Company is estopped to assert title to the dividends which, in distribution, she paid to Charles H. Remington, the other legatee. See *Boas* v. *Updegrove*, 5 Pa. St. 516.

The appeal is sustained and the decree appealed from is reversed. The parties may on July 6, 1925, present for our approval a form of decree in accordance herewith to be entered in the Superior Court.

*John Henshaw, John W. Baker, Henshaw & Sweeney,* for Complainant.

*Percy W. Gardner, Ada L. Sawyer,* for respondent Braiding Company.

*McGovern & Slattery,* for respondent Pearl M. T. Remington.