LUCY MAE STUBBS *et al. vs.* JAMES L. TAFT *et al.*

MARCH 31, 1959.

PRESENT: Condon, C.J., Roberts, Paolino and Powers, JJ.

PAOLINO, J. This action of the case in the nature of conspiracy was brought under the provisions of general laws 1938, chapter 575, §50, now G. L. 1956, §33-18-17. The case is before us on the plaintiffs' bill of exceptions to the decision of the trial justice sustaining the demurrers of both defendants to the declaration.

The plaintiffs, who are the heirs-at-law of Mabel L. Whitmarsh, late of the city of Cranston, deceased, brought the action for damages in behalf of and in the name of the estate of Mabel L. Whitmarsh as persons legally interested in said estate. At the time of the alleged conspiracy William J. McGair was the administrator of the estate of Lucy L. Bishop, deceased, and also guardian of the estate of Mabel

464

L. Whitmarsh. He had been appointed to such offices by James L. Taft, judge of the probate court.

Both defendants demurred to the declaration and the counts thereof. Although the demurrers contained several grounds, defendants' principal contentions in the superior court were (1) that an action of trespass on the case in the nature of conspiracy cannot be maintained by a person other than the legal representative of a decedent's estate under §33-18-17; (2) that it does not appear from the facts alleged in the declaration that plaintiffs have complied with the provisions of said statute; and (3) that the declaration fails to allege facts which would support an action of the case in the nature of conspiracy.

After hearing arguments of opposing counsel, the trial justice filed a rescript in which he sustained the demurrers of both defendants on the grounds (1) that the instant action is not within the purview of the statute in question; (2) that even if it were, plaintiffs have failed to allege facts showing compliance with the requirements of the statute; and (3) that there are not sufficient allegations of facts from which an intent to conspire may reasonably be inferred.

The plaintiffs' exceptions are based on their contentions (1) that said statute does not create a new cause of action; (2) that the instant action is within the purview of §33-18-17; (3) that the declaration alleges sufficient facts upon which to predicate an action for conspiracy; and (4) that defendant McGair has waived his demurrer by the simultaneous filing of a plea of the general issue.

We have carefully read each of the counts in plaintiffs' declaration and have examined the provisions of §33-18-17. For the purposes of this discussion we shall assume, without deciding, that the instant action is within the purview of said statute. See *Arnold* v. *Barrington,* 44 R. I. 298, and *Hatton* v. *Howard Braiding Co.,* 47 R. I. 47, 57. We shall likewise assume that said statute does not create a new

cause of action and that the allegations in the declaration show that plaintiffs have complied with the procedural requirements of the act.

However, even on such assumptions it is our opinion that the trial justice did not err in sustaining each demurrer. One of the principal grounds upon which defendants attack the declaration and the several counts thereof is the failure of plaintiffs to state facts which would support the instant action. On this point the real issue is whether plaintiffs have alleged sufficient facts to support the conclusions of law that there was a conspiracy. The mere allegations of conclusions of law are not sufficient. See *Reynolds* v. *Hennessy,* 15 R. I. 513, 516.

The declaration is in three counts. In the first count plaintiffs allege in substance that in 1940 Charles L. Southy was appointed by the probate court as conservator of the estate of Lucy L. Bishop, sister of Mabel L. Whitmarsh; that at that time Lucy L. Bishop was the owner in fee of realty in Cranston and was a cotenant with Mabel L. Whitmarsh in certain realty in the city of Warwick; that in 1945 Southy as conservator sold the Cranston real estate to himself through a straw purchaser for a grossly inadequate consideration; that he did not notify Lucy L. Bishop, Mabel L. Whitmarsh or the probate court of the details of the transaction or of the full nature of his participation therein; that in 1946 Southy caused Mabel L. Whitmarsh to convey her interest in the Warwick realty to Lucy L. Bishop so that he then became conservator of said property; that in 1948 as such conservator he sold the Warwick property to a bona fide purchaser for an adequate consideration; that in 1950 Lucy L. Bishop died; and that immediately thereafter Southy caused Mabel L. Whitmarsh to be committed to the state hospital for mental diseases at Howard.

The plaintiffs further allege in the first count that in March 1951 petitions were filed in the probate court in behalf of Mabel L. Whitmarsh, praying for administration

of the estate of Lucy L. Bishop and for the guardianship of Mabel L. Whitmarsh; that the probate judge James L. Taft refused to act upon these petitions and continued them nisi with a certain admonition to Whitmarsh's counsel; that thereupon Mabel L. Whitmarsh, through her counsel, filed two bills of complaint in the superior court complaining of Southy; and that in October 1951 the trial justice sustained respondents' pleas in those cases on the ground that, as an inmate of a mental institution, Mabel L. Whitmarsh was incompetent to bring an action in her own behalf.

It is further alleged in the first count that upon the death of Lucy L. Bishop in 1950 Mabel L. Whitmarsh was her sole heir and as such was entitled to receive the value of the entire Bishop estate less legitimate charges and deductions; that defendants contriving wickedly, maliciously and wrongfully to injure and damage said Whitmarsh, during the year 1951, the exact date being unknown to plaintiffs, conspired and agreed to make use of legal proceedings to fraudulently deprive her of her lawful inheritance and to allow Southy to retain the fruits, or major part thereof, acquired by him from his malfeasance as conservator and trustee of Bishop's estate; that specifically defendants conspired to have defendant McGair appointed guardian of Mabel L. Whitmarsh and administrator of Lucy L. Bishop's estate; that defendants further conspired that upon such appointments McGair would secure the discontinuance of the bills of complaint hereinbefore mentioned; and that he would not contest Southy's account but would allow it to become final.

The plaintiffs further allege that pursuant to and as a result of the aforesaid conspiracy, defendant Taft in June 1951 caused defendant McGair to be appointed guardian of the estate of Mabel L. Whitmarsh and administrator of the estate of Lucy L. Bishop; that in January 1952 McGair, pursuant to his conspiracy with Taft, joined in a motion

by Southy for the dismissal of the bills of complaint hereinbefore mentioned; that in May 1952 Southy filed in the Cranston probate court an amended first and final account of his conservatorship of Lucy L. Bishop's estate, which included charges not properly relating to the conservation of the estate; that McGair in pursuance of the conspiracy concurred in the allowance of the account; that on the same date on which it was filed defendant Taft allowed it and entered a decree; and finally that McGair had knowledge of the impropriety of the contents of the final account but allowed the decree to become final, thus absolving Southy of any further liability for his malfeasance and depriving Mabel L. Whitmarsh of her lawful inheritance.

The allegations in the first count are incorporated by reference in the second and third counts. The second count also alleges that in 1955 McGair filed his account as administrator of Lucy L. Bishop's estate and that defendants, by virtue of their conspiracy to use legal proceedings to deprive Mabel L. Whitmarsh of her lawful inheritance and any rights she may have had against McGair, caused McGair's account to be continued nisi. The third count further alleges that defendants, contriving wickedly and maliciously to injure and damage the estate of Mabel L. Whitmarsh under guardianship, conspired and agreed to make use of legal proceedings to fraudulently deprive her of her rights in the premises and insulating Southy from all legal action by her arising from his maladministration of the Bishop conservatorship; and that therefore said Whitmarsh was deprived of her lawful inheritance from the Bishop estate.

The only facts alleged by plaintiffs in the declaration relate to the appointment of Southy and McGair to certain offices of trust by defendant Taft and to alleged breaches of trust by them. On the basis of those allegations plaintiffs further alleged in each count of the declaration that defendants contrived wickedly, maliciously, and wrongfully, to injure and damage Mabel L. Whitmarsh and that they

conspired and agreed to make use of legal proceedings to deprive her of her lawful inheritance. The allegations charging a conspiracy are conclusions of law and not statements of fact which show that defendants conspired against Mabel L. Whitmarsh; nor are they statements of fact from which such a conspiracy could reasonably be inferred.

The evidence necessary to prove a conspiracy is well stated in 12 C.J., Conspiracy §234, p. 639, as follows:

> "In Civil Cases. In order to establish a conspiracy evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. However, the doctrine of reasonable doubt has no place in a civil suit for damages where it is sufficient if the evidence is full, clear and satisfactory, and the conspiracy established by a preponderance of the evidence. This degree of proof, however, is necessary. The evidence must do more than raise a suspicion. It must lead to belief."

See also 15 C.J.S., Conspiracy §30.

After careful consideration it is our opinion that plaintiffs have failed to allege sufficient facts which, if proved, would support the instant action.

The only question remaining is plaintiffs' contention that defendant McGair, by filing a plea of the general issue simultaneously with his demurrer, waived the latter. It appears from the record that both demurrers were argued together on February 26, 1958; that the trial justice reserved decision thereon; that McGair's demurrer and plea were filed on February 27, 1958; and that the rescript of the trial justice was filed on April 29, 1958. In such rescript he stated specifically that each defendant had demurred to the declaration and the several counts thereof. The plaintiffs did not raise this issue in the superior court. There was therefore no ruling thereon by the trial justice and conse-

quently no exception on the record. See G. L. 1956, §§9-24-15 and 17. See also *Providence Fruit & Produce Bldg., Inc. v. Gamco, Inc.,* 76 R. I. 54.

However, assuming without deciding that the plaintiffs' instant contention is properly before us, in our opinion it is lacking in merit. It is clear from the record that McGair's demurrer was considered by the trial justice with McGair's approval. It is also clear that the plaintiffs, by not objecting to such action by the trial justice, agreed to the same. Moreover the correctness of his ruling on the demurrer is supported by 71 C.J.S., Pleading §263, p. 540, which the plaintiffs included in their brief and which states: "A party may waive or abandon his demurrer or exception by conduct inconsistent with an intention to rely on it. In order to waive a demurrer, however, the litigant must do something, and where he insists on the demurrer which he has filed he may not be said to have waived it."

The plaintiffs' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*Aram K. Berberian,* for plaintiffs.

*James C. Bulman,* for defendant James L. Taft.

*Frank Shea,* for defendant William J. McGair.