**READ & LUNDY, INC. and Clifford McFarland**

v.

**The WASHINGTON TRUST COMPANY OF WESTERLY.**

No. 2003–20–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2004.

---

John P. Gyorgy, Esq., Providence, for plaintiff.

Melissa E. Darigan, Esq., Providence, for defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiffs, Read & Lundy, Inc. (R & L) and Clifford McFarland, appeal from a summary judgment in favor of the defendant, the Washington Trust Company of Westerly (hereinafter "the bank"). Essentially, the plaintiffs alleged that the bank injured the plaintiffs when it loaned money to a competitor, Consigned Systems, Inc. (CSI) founded by a former R & L employee. The plaintiffs' action against the bank alleged breach of contract, tortious inter-ference with contractual relations, conspiracy, and violation of the Uniform Trade Secrets Act, G.L.1956 chapter 41 of title 6.

This case has a long history, including an appeal by plaintiffs to this Court in a related case, *McFarland v. Brier*, 769 A.2d 605 (R.I.2001). In that case, plaintiffs prevailed against CSI, which "directly engaged in head-to-head competition" with R & L. *Id.* at 608. The principals of CSI were Dennis Bibeau (Bibeau), a former employee of R & L who had tried unsuccessfully to buy R & L, and Michael Brier (Brier), an accountant who had handled the financing during that attempted buy-out. *Id.* at 607–08.

The plaintiffs filed this case against the bank in June 1999, alleging that when the bank loaned money to CSI, it used confidential information obtained when Bibeau originally was trying to purchase R & L. The plaintiffs alleged that CSI's business plan detailed its intention to "steal more than half" of R & L's customer base, and that it included confidential financial information known to Brier because of his accounting work for R & L. The plaintiffs accused the bank of breach of contract, interference with contractual relations, civil conspiracy, and violation of the Uniform Trade Secrets Act, chapter 41 of title 6. A Superior Court motion justice, however, granted the bank's motion for summary judgment. The plaintiffs then appealed to this Court. After a prebriefing conference, a single justice of this Court assigned the appeal to a conference of the Court to consider the possibility of deciding this case without oral argument or further briefing. After reviewing the parties' written submissions, we are of the opinion that we can decide this case at this time.

First, plaintiffs argue that the motion justice misinterpreted the law and ignored evidence when she ruled that sum-

mary judgment should be entered in favor of defendant on its breach of contract claim. We disagree. An essential element to the formulation of any true contract is an "intent to contract." *Bailey v. West*, 105 R.I. 61, 66, 249 A.2d 414, 417 (1969). Here, there was no evidence that the parties ever considered what would happen to plaintiffs' financial information after they provided it to the bank, much less that the parties mutually agreed it would not be used by the bank beyond consideration of Bibeau's loan application. The evidence that plaintiffs insist the hearing justice overlooked failed to establish the existence of a mutual agreement, the *sine qua non* of either an express or implied contract.

■ In the absence of an agreement, there does not appear to be any prohibition against the bank's use of the information supplied by plaintiffs to consider CSI's loan application. This Court has not expressly considered whether a bank may use a commercial customer's loan application information internally to consider another commercial customer's loan application. Other courts, however, have examined this question. In *Washington Steel Corp. v. TW Corp.*, 602 F.2d 594, 603 (3d Cir.1979), *overruled on other grounds*, *Clark v. K–Mart Corp.*, 979 F.2d 965 (3d Cir.1992), the court stated, "[w]e do not believe that a bank violates any duty it may owe to one of its borrowers when it uses information received from that borrower in deciding whether or not to make a loan to another prospective borrower." *Cf. Fleet National Bank v. Liuzzo*, 766 F.Supp. 61, 68–69 (D.R.I.1991) (holding that lender's relationship with borrower's financial advisor did not violate any duty lender owed borrower). In the absence of any agreement between the bank and its customer providing that the bank would not use any information received from the customer in deciding whether to lend money to another borrower, we agree with this proposition.

■ Next, plaintiffs argue that the motion justice erred in deciding that no evidence showed that the bank interfered with plaintiffs' contractual relationships with customers. "To prevail on a claim alleging tortious interference with [a] contract, a plaintiff must show (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [her or its] intentional interference; and (4) damages * * *." *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 906 (R.I. 2002). As the motion justice observed, plaintiffs failed to show any connection between the alleged loss in profits that plaintiffs sought to recover and the bank's action in lending money to CSI. In addition, plaintiffs presented no evidence that the bank intended to harm them. Thus, we agree that summary judgment for the bank was appropriate on plaintiffs' allegation of interference with contract.

■ The plaintiffs also fault the motion justice for her ruling on their claim of a civil conspiracy. To prove a civil conspiracy, plaintiffs had to show evidence of an unlawful enterprise. *ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I.1997) (per curiam) (citing *Stubbs v. Taft*, 88 R.I. 462, 468, 149 A.2d 706, 708 (1959)). Furthermore, civil conspiracy is not an independent basis of liability. It is a means for establishing joint liability for other tortious conduct; therefore, it "requires a valid underlying intentional tort theory." *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F.Supp.2d 263, 268 (D.R.I. 2000). The motion justice correctly granted summary judgment because plaintiffs failed to show any facts that would support an underlying intentional tort liability against the bank. Also, no evidence existed to show that the bank conspired to harm plaintiffs in any way. Although

plaintiffs cite facts from *McFarland* in which this Court opined that the actions of Brier and CSI constituted "egregious misconduct," plaintiffs failed to present evidence of such misconduct on the part of the bank. *See McFarland*, 769 A.2d at 612.

■ Last, the plaintiffs argue that the motion justice erroneously concluded that their claim for violation of the Uniform Trade Secrets Act (UTSA) was time-barred. In a deposition taken on January 25, 1996, however, more than three years before they filed this suit, a bank officer testified that he had information about R & L in the bank's loan file for CSI for comparison purposes. Therefore, the plaintiffs were aware as early as January 1996 that the bank was using information about R & L to consider CSI's loan request, yet they failed to file this suit until June 1999. As a result, this claim is time-barred under G.L.1956 § 6–41–6 (prescribing three-year statute of limitations for UTSA claims that commences to run when claimant discovers or should have discovered misappropriation).

We have carefully considered the record in this case and the memoranda filed by the parties. For the reasons stated above, we affirm the summary judgment and remand the papers in this case to the Superior Court.