**Jose R. FRANCO–RIVERA, Plaintiff,**

v.

**The CHAIRMAN OF the BOARD OF DIRECTORS OF the FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**No. Civil 87–1462CC.**

United States District Court, D. Puerto Rico.

Aug. 5, 1988.

José Antonio Pagán–Nieves, Hato Rey, P.R., for plaintiff.

Daniel F. López–Romo, U.S. Atty., Fidel A. Sevillano-del-Río, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This action, arising from alleged employment discrimination based upon national origin, is before us on a Motion to Dismiss filed by the Chairman of the Board of Directors of the Federal Deposit Insurance Corporation. The basis for the motion is two-fold: it is first alleged that Franco Rivera failed to exhaust his administrative remedies in that he did not bring the matter to the attention of the Equal Employment Opportunity Counselor within thirty-calendar days while the second ground raised is insufficiency of service.

Plaintiff José R. Franco Rivera, a Puerto Rican, was hired by the Federal Deposit Insurance Corporation (FDIC) to work as an attorney in its legal Division in San Juan, Puerto Rico in September 1982. He worked there until January 1987. The Senior Attorney Max Ramírez de Arellano hired him at a level 9/1 classification, telling Franco Rivera that this was the highest grade he could offer, based on instructions from the agency's Washington, D.C. office. Shortly thereafter, Franco Rivera was promoted to grade level 11/1. It is alleged that, notwithstanding his excellent performance, Mr. John David Ferrer, successor to Mr. Ramírez de Arellano as senior attorney, told plaintiff that the usual salary increases at the FDIC were one within-grade step at a time and that only in very extraordinary cases were increases in *grades* allowed. Eventually, after three years in the division, plaintiff was raised to a 12/1 grade level. He finally reached the 12/2 level before he left the agency.

It is Franco Rivera's position that at all times during his tenure at the Federal Deposit Insurance Corporation he was classified and paid at a level lower than what he should have been, considering his duties, skills, and performance, and that this decision to offer him lower grades was made because he is Hispanic. He contends that his legal counterparts in the mainland division were graded at higher levels and received greater pay for the same work.

The courts have consistently stated that the "timely filing [of an administrative charge] is a prerequisite to the maintenance of Title VII action."[1] *See Castro v. United States*, 584 F.Supp. 252, 258 (D.P.R.1984), *aff'd.* 775 F.2d 399 (1st Cir.1985). Equal Employment Opportunity Commis-

---

**1.** It is well established that the exclusive judicial remedy for employment discrimination within the federal government is found in section 717 of Title VII, 42 U.S.C. Section 2000e–16. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

sion (EEOC) regulations specifically require that the employee submit the complaint to the appropriate agency official after bringing the matter to the attention of an agency EEO counselor within thirty days of the alleged violation, or, if a personnel action within thirty days of its effective date; and within fifteen days of his final interview with the counselor.[2]

■ Franco Rivera contacted the EEO counselor for the first time on August 5, 1987, some eight months after he left the FDIC. It is defendant's position that the plaintiff failed to exhaust his administrative remedies when he did not contact the EEO counselor within the required thirty-day period. Plaintiff replies that he did not find out until August 3, 1987 about the matter of the discrimination.[3]

Defendant, on the other hand, cites *Bickham v. Miller*, 584 F.2d 736 (5th Cir.1978) and *Eagle v. Regan*, 599 F.Supp. 38 (N.D. 1984) to support the contention that the discriminatory actions did not offend the plaintiff at the time they were made, and his delay in investigating his cause of action should not be rewarded by extending the deadlines for filing his administrative complaint. Both cases, however, are distinguishable from the one at bar. In *Eagle*, plaintiff knew from the moment that the decisions regarding her work assignments, loss of overtime pay and use of a government automobile were made that her pregnancy was the motivating reason. Likewise, in *Bickham*, where plaintiff alleged sex discrimination in the denial of a promotion, the district court apparently believed that with little investigation she could have learned that no women served on the promotion evaluation committee.

On the other hand, this case presents impressive evidence of a concerted effort by Senior Attorney John David Ferrer, to conceal what appears to be a prima facie case of discrimination based on national origin. We quote from defendant's own Exhibit B, the EEO counselor's report dated September 3, 1987, submitted with his response to plaintiff's reply to his motion to dismiss (docket entry 11A filed on April 11, 1988): [4]

> The listing shows that during this period, nineteen attorneys were hired in the New York Region's Legal Division. Of these, nine were hired for the New York Regional and Consolidated Offices, while ten were hired for the Puerto Rico Consolidated Office. No Hispanics were hired in New York; no non-Hispanics were hired in Puerto Rico. *In New York, two of the nine were hired at grade 11; the other seven were hired as follows: three grades 12 (12/1, 12/1, 12/6), three grades 13 (13/2, 13/6, 13/10) and one grade 14/2. In Puerto Rico those hired were: two paralegals at grade 5/1 who were promoted to grade 9/1 upon passing their bar examinations; one grade 9/1, six grades 11 (one grade 11/5; one grade 11/3, four grades 11/1) and one grade 12/1.*
>
> ... The hiring policy utilized /in Puerto Rico/ was one of hiring the best candidates possible for the lowest salary they would accept.... ADO /Alleged Dis-

---

**2.** 29 CFR Section 1613.214 states in its pertinent part:

(a) *Time limits.* (1) An agency shall require that a complaint be submitted in writing by the complainant or his representative and be signed by the complainant. The complaint may be delivered in person or submitted by mail. The agency may accept the complaint for processing in accordance with this subpart only if:

(i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or if a personnel action, within 30 days of its effective date; and (ii) the complainant or his representative submitted his complaint to the appropriate official within 15 calendar days of the date of his final interview with the Equal Employment Opportunity Counselor.

**3.** Franco Rivera alleges that he learned of the discriminatory conduct from a former colleague who also worked as an attorney at the FDIC and who had filed a complaint of discrimination based on national origin.

**4.** The finding of concealment of the discrimination is made solely for the limited purpose of determining whether the time parameters for filing should be considered as having been met. *See Bickham v. Miller*, 584 F.2d 736–737 (5th Cir.1978).

criminatory Officer/ Ferrer and Attorney Nathan stated that salaries were negotiable and the lawyers were hired at 'market levels'—whatever the market would bear. Furthermore, the ADO feels that the C.O.L.A. (cost of living allowance) is income and, as such, should be considered income and part of one's salary—thus it enters into salary negotiations. When it was pointed out that the C.O.L.A. could be reduced—as it has been already—and even eliminated, the ADO answered that, in the latter situation, he would recommend everyone for a promotion. (Emphasis ours.)

The report includes summaries of interviews with the attorneys in the Puerto Rico office. It is evident that they were led to believe that the highest starting grade was an 11:

"Ms. Pujals stated that all experienced attorneys were hired at grade 11, except for exceptional cases—i.e., those with specific expertise...."

"Ms. Landrove is aware that experienced attorneys are told that they can start at no higher than a grade 11/1."

"Ms. Ocasio was told by the ADO, upon being hired, that all experienced attorneys start at grade 11/1."

"Mr. Fornaris states that he was told, at the time of his pre-hiring interview by the ADO, that all experienced lawyers started at no higher than grade 11."

"Ms. Lavergne ... was told experienced attorneys started at no higher than grade 11."

The statements quoted here are the investigative findings of the EEO counselor, not the allegations made to him by plaintiff. We also take judicial notice of the case *Antonio J. Cabrero, et al v. The Chairman of the Board of Directors of the Federal Deposit Insurance Corporation*, Civil No. 87–1268GG, in which the allegations and EEO reports reveal more of the same contentions and evidence as in this case.

We find this case more in the category of *Reeb v. Economic Opportunity Atlanta*, 516 F.2d 924 (5th Cir.1975), where a female employee was dismissed in September 1969, allegedly for lack of funds. In the spring of 1970, she learned that her former position had been filled in November 1969 by an allegedly less qualified male. Within days of learning of this, she filed her charges with the EEOC. The Circuit Court, vacating the dismissal of the case, found that the period for filing charges of employment discrimination with the EEOC did not begin to run until facts that would support a charge of discrimination were apparent or should have been apparent to a person with a reasonably prudent regard for his rights. As that court succinctly stated:

Secret preferences in hiring and even more subtle means of illegal discrimination, because of their very nature, are unlikely to be readily apparent to the individual discriminated against. Indeed, *employers that discriminate undoubtedly often attempt to cloak their policies with a semblance of rationality and may seek to convey to the victim of their policies an air of neutrality or even sympathy. These tendencies may even extend to the giving of misleading or false information to the victim*, as is alleged in the present case. (Emphasis added.)

The Court of Appeals for the First Circuit cited *Reeb* with approval on this point, although distinguishing it from the case before it. *See Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982) ("*Earnhardt* was not, however, given a phony reason for his discharge. Not giving any reason is altogether different from providing a specious one.")

■ Although courts have taken a uniformly narrow view of equitable exceptions to Title VII limitation periods, equitable modification is appropriate where the employer actively misled the employee concerning the reasons for the actions. *See Earnhardt, supra*, at 72, citing *Smith v. American President Lines Ltd.*, 571 F.2d 102 (2nd Cir.1978).

We have before us a case where the hiring officer appears to have misrepresented the starting grade levels to everyone he interviewed and all of those in his employ.

Thus, we find that it is more than likely that any co-workers with whom plaintiff could consult on this point would have been under the same mistaken belief.[5]

In light of the above, we find that Franco Rivera's failure to file his charges earlier is excusable and that it would create a grave injustice to bar this action, in turn rewarding the defendant for what may prove to be massive, across-the-board, discriminatory practices in its San Juan office. The Motion to Dismiss filed by defendant (docket entry 7) is, therefore, DENIED.

■ Defendant is correct, however, in his observation that Rule 4(d)(4) and (5) of the Federal Rules of Civil Procedure requires service of process on the United States as well as the officer or agency. The provisions require delivery of a copy of summons and complaint to the United States Attorney *and* mailing copies to the Attorney General by registered or certified mail. *Sánchez Mariani v. Ellingwood,* 691 F.2d 592, 595 (1st Cir.1982). These are mandatory requirements which cannot be dispensed with as a simple formality. *See e.g., Smith v. McNamara,* 395 F.2d 896, 898 (10th Cir.1968).

For the above-stated reasons, the motion to dismiss is DENIED. Plaintiff is GRANTED a term of thirty (30) days from notice to serve the United States in the manner required by law.

SO ORDERED.

---

5. In its final decision of September 29, 1987 the Equal Employment Opportunity officer for the FDIC makes the following statement regarding a document, Hiring Pattern for Entrance–Leave Attorney and Law Clerk Positions, which plaintiff contends supports his claim of discrimination:

Further, the document on which you rely was in effect and available during your employment with the Corporation.

There is no evidence, however, that FDIC made this document available to its employees, or for that matter, even informed them of its existence.