Jose R. MACHADO

v.

Anthony M. FRANK, Postmaster General, et al.

Civ. A. No. 89–0170 P.

United States District Court, D. Rhode Island.

June 4, 1991.

Sandra A. Blanding, Warwick, R.I., for plaintiff.

Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., Nancy F. Janes, Office of Field Legal Services, U.S. Postal Service, Windsor, Conn., for defendants.

## OPINION

PETTINE, Senior District Judge.

Jose Machado works for the United States Postal Service. In April 1987 he sought a transfer and his request was denied. Due to that denial, he now brings this action pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, alleging discriminatory treatment in employment based on his national origin. After presiding over the two day trial, I find that Mr. Machado's claims are barred for failure to file within the prescribed time period. Moreover, as I will explain below, even if the plaintiff's claims were not time barred, I believe that the discrimination claim would fail on its merits.

## FINDINGS OF FACT

The plaintiff in this case was born in Providence, Rhode Island with the name "Joseph Marshall." In 1976, he legally changed his name to "Jose Machado" in order to reclaim his heritage. He chose the family name "Machado" as that was the name his paternal grandparents had when they arrived in this country from Spain. Mr. Machado identifies himself as Hispanic and is actively involved in Hispanic clubs and social organizations. He was not, however, identified as Hispanic in his personnel records with the postal service until he requested a change to that classification in January of 1989.

Mr. Machado earned a Bachelor's Degree from California State University in 1982. Upon his return to Rhode Island he retained full-time employment with the Rhode Island National Guard. In April 1986, he started working for the United States Postal Service. At that time he went on part-time status with the National Guard. From 1983 to the present he has continued on part-time status with the National Guard as an Equal Opportunity Advisor. He received sixteen weeks of training for that position.

The plaintiff's first position within the Postal Service was that of a part-time flexible ("PTF") distribution clerk. As a PTF, his hours varied. It was possible for him to work additional hours per week, but he had to work the night shift. He held that position until August 1986 when he bid, based on his seniority, into a position as a part-time regular ("PTR") distribution clerk at the Elmwood post office. As a PTR, Mr. Machado worked on the day shift but was working fewer hours than he had as a PTF.

In March 1987, Mr. Machado sought to return to PTF status to increase his hours. He made his request in a letter to the manager of personnel services, then Donna Kovalski. Unlike his move from PTF to PTR, a transfer back to PTF is not governed by seniority. Whether such a transfer will be granted is a management decision. According to Mr. Machado's testimony, at the end of March he followed up his

letter with a telephone call to Ms. Kovalski.[1] In Mr. Machado's words, she told him "that it was the postal management's posture at this time that they were not in need of any part-time flexible distribution clerks so, therefore, until things changed, [Machado] would have to remain in [his] present position at Elmwood Avenue or try to get a position into management." (T. 11.14.90 at p. 45) Mr. Machado also testified that Ms. Kovalski told him that "she would keep [his request] on file and if anything changed, she would let [him] know." (T. 11.14.90 at p. 46) Following this conversation, Mr. Machado received a written notification of the denial of his transfer request in a letter dated April 2, 1987.[2]

It is the practice of the postal service to post notices of personnel actions in every post office. The notices are signed by the manager of personnel services. At the Providence post office the notices are kept behind a locked glass. At Elmwood, where Mr. Machado worked, the notices were posted on a clipboard. After the denial of his transfer, Mr. Machado checked the notices daily. (T. 11.14.90 at p. 58) In November of 1987, he transferred to the Garden City post office in another PTR position. Eighteen months after his transfer to PTF was denied, in October 1988, Mr. Machado had a conversation with a co-worker and became suspicious about the reasons for the denial of his transfer request. He asked to see all of the old personnel notices and discovered, in a notice dated May 19, 1987, that two employees had received transfers from PTR distribution clerks to PTF distribution clerks effective June 6, 1987. (Plaintiff's Exhibit 22) Mr. Machado said that when he saw the names of those two employees, Robert Rebeiro and Mary Ann Lynch, he knew he had been discriminated against because "[he] was a minority and they were not." (T. 11.14.90 at p. 178–79.)[3]

The plaintiff stated that he had not seen the May 19, 1987 notice at the Elmwood Station and that he first became aware of transfers from PTR to PTF status in October of 1988. (T. 11.14.90 at p. 58, 159) The defendants placed into evidence eleven personnel notices with dates from April 3, 1987 to October 16, 1987. These notices indicated that other employees had been reassigned to PTF distribution clerk positions.[4] Unlike the May 19, 1987 notice, these notices did not indicate the position from which the employee was transferring; only the position to which the employee was going. Marc Belhumeur, the present manager of personnel services, noted that the May 19, 1987 notice was unique and that generally the notices only indicate the

---

1. Ms. Kovalski no longer works for the post office and could not be located for trial.

2. The letter stated:

   This letter is in response to your letter of March 20, 1987, wherein you requested to revert back to a Part–Time Flexible Manual Distribution Clerk from your Part–Time Regular position.

   Please be advised that until such time as you are able to bid out of your position into a position you would like, you will have to remain at the Elmwood Station. (Plaintiff's Exhibit 16)

3. It is somewhat ironic that Mr. Machado drew his conclusion regarding the ethnic identity of the two employees based on their names when he, himself, was born with a non-Hispanic name. As I noted earlier, the plaintiff's own name did not reflect his ethnic background until he legally changed it in 1976.

4. The notices were dated April 3, 1987, April 10, 1987, April 20, 1987, April 21, 1987, April 30, 1987, May 5, 1987, May 29, 1987, June 5, 1987, July 10, 1987, October 5, 1987 and October 16, 1987.

These notices were marked *de bene* and introduced conditionally. (T. 11.14.90 at p. 163) I allowed them in, subject to being stricken if the defendants did not prove that the notices were indeed posted. (T. 11.14.90 at p. 163–64). Marc Belhumeur, manager of personnel services, testified that it was postal service policy to post the personnel notices at every post office. (T. 12.-17.90 at p. 49) Douglas Cairns, a postal employee who worked at the Elmwood Station for the first three months of 1987, testified that during that period personnel notices were regularly posted at the Station. (T. 12.17.90 at p. 66). Furthermore, Mr. Machado, himself, admitted to seeing some of the notices.

Upon reviewing the evidence in this case, I discovered that the defendants' exhibits A through R were only marked for identification. The plaintiff never moved to strike the notices and, as I find that the defendants did present sufficient proof that the notices were posted, I consider them to be full exhibits.

position the employee is transferring to. (T. 12.17.90 at p. 19). Mr. Machado admitted that he saw at least some of the notices offered by the defendants. (T. 11.14.90 at p. 163)

Within ten days after discovering the May 19, 1987 notice, Mr. Machado sent a letter to Mr. Belhumeur informing him of the events that had taken place and requesting reassignment to a PTF position with seniority retroactive to the date of his initial request in March of 1987. Mr. Belhumeur agreed to the transfer but without retroactive seniority. Mr. Machado turned down the offer and, on November 3, 1988, filed an informal complaint of discrimination with the Equal Employment Opportunity ("EEO") Officer at the United States Postal Service. Receiving no satisfaction, Mr. Machado filed a formal complaint on December 19, 1988. The final agency decision rejected his complaint as untimely on February 17, 1989. (T. 11.14.90 at p. 85–87)

DISCUSSION

*Timely Filing*

In this case, I must resolve a threshold issue—whether plaintiff's claim is defeated by his untimely filing of his complaint with the EEO counselor at the post office. It is undisputed that the incident Mr. Machado is complaining of occurred eighteen months prior to the time of his filing of a complaint. The question before this Court is whether he is entitled to a waiver of that requirement under either, first, 29 C.F.R. § 1613.214(a)(4) or, second, the doctrine of equitable tolling.

Under Title VII, the federal government has waived its sovereign immunity to a certain extent. *See* 42 U.S.C. § 2000e–16. Prior to filing a complaint in court, however, a Title VII plaintiff must exhaust his administrative remedies. *Brown v. General Services Administration*, 425 U.S. 820, 829–35, 96 S.Ct. 1961, 1966–69, 48 L.Ed.2d 402 (1976); *Castro v. U.S.*, 775 F.2d 399, 402 (1st Cir.1985). The procedures that federal employees must follow are detailed at 29 C.F.R. §§ 1613.201–1613.283. The procedure has been summarized by the District of Columbia Circuit Court of Appeals:

[T]he regulations require a federal employee to bring his or her complaint to the attention of one of the agency's EEO counselors ordinarily within thirty days of the alleged Title VII violation. If the matter is not resolved at this threshold, the complaint is formally filed with the agency. After the agency's investigation, if relief acceptable to the employee is not offered, the employee may request an evidentiary hearing before an examiner who is not employed by the agency. Final decision is entrusted to the head of the agency or an official designated by the agency head. The employee may appeal the agency's final decision to the EEOC ... but a court action may be initiated without pursuing administrative relief beyond the agency level. *Kizas v. Webster*, 707 F.2d 524, 544 n. 99 (D.C.Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

The requirement that the procedure be initiated with an EEO counselor within thirty days of the discriminatory event is found at 29 C.F.R. § 1613.214(a)(1)(i). Failure to contact an EEO counselor within the allotted time period bars a civil action based on that event. *Cano v. U.S. Postal Service*, 755 F.2d 221, 223 (1st Cir.1985). There is, however, an exception to this bar.

The agency shall extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for any other reasons considered sufficient by the agency. 29 C.F.R. § 1613.214(a)(4).

The language of the regulation itself indicates that the plaintiff bears the burden of proving that the exception should apply.

■ Mr. Machado has not argued, nor could he given his EEO training, that he was ignorant of the filing requirements. He argues instead that he was prevented from filing within the allotted time period by "circumstances beyond [his] control." He contends that he had no knowledge that others had obtained transfers from PTR to

PTF and, thereby, did not have reason to suspect a discriminatory motive on the part of the defendants. The determination of circumstances beyond the complainant's control, however, "is not based on a subjective test of when plaintiff allegedly learned of facts that would support a discrimination charge." *Wolfolk v. Rivera*, 729 F.2d 1114, 1117 (7th Cir.1984). Rather, "[a] person is 'prevented by circumstances beyond his control' from submitting a discrimination charge until the time when 'facts that would support a charge of discrimination under Title VII [are] apparent or should [be] apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.' " *Id.* (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975)).

■ Whether a plaintiff qualifies for the regulatory exception to the thirty day limitation period is, obviously, a fact specific inquiry. Courts have granted the exception when the necessary information was in the hands of the employer and inaccessible to the employee, for instance, in cases of hidden pay disparities. *See Wolfolk*, 729 F.2d at 1118; *Franco–Rivera v. Chairman of the Board of Directors of the F.D.I.C.*, 690 F.Supp. 118, 121–22 (D.P.R.1988). The exception should be denied when "a specific situation ... should put the employee on notice that he might be discriminated against." *Suarez v. Chairman of Board of Directors of F.D.I.C.*, 692 F.Supp. 43, 47 (D.P.R.), *vacated in part,* 707 F.Supp. 623 (D.P.R.1988); *see Bickham v. Miller*, 584 F.2d 736, 737 (5th Cir.1978) (denial of promotion); *Jones v. U.S. Postal Service*, No. 81–C–7192 (N.D.Ill.1982) (cited in *Suarez*, 692 F.Supp. at 47) (reduction in grade). In other words, once a discrete event occurs, such as a denial of a request, a plaintiff is on notice and has an obligation to investigate further in order to safeguard his rights. *See Bickham*, 584 F.2d at 738; *Franco–Rivera*, 690 F.Supp. at 120.

■ In the instant case, there was a discrete event; Mr. Machado's request for a transfer to PTF status was denied. Mr. Machado was, therefore, on notice. Additionally, the necessary information was not solely in the control of the defendants. As is evidenced by the fact that Mr. Machado was able to obtain all of the past personnel notices in October 1988 from his supervisor, personnel information was freely available to employees.

At trial, the plaintiff focussed on the fact that he did not see the May 19, 1987 notice detailing transfers from PTR to PTF status until October 1988. Whether Mr. Machado saw that particular notice or not, however, is not dispositive. He did see other notices that clearly indicated that other employees were obtaining PTF positions. The fact that he did not know with any certainty whether they were transferring from PTR positions does not change the calculation here. "A person with a reasonably prudent regard for his rights" would have investigated further upon learning that others obtained the position he sought and was denied. Had Mr. Machado been more vigilant with regard to his rights he could have discovered the transfers detailed in the May 19, 1987 personnel notice at a much earlier date. "As to [plaintiff's] claimed benightedness, that is plainly not enough; knowledge of [the denial and the ensuing transfers] was there to be obtained. If we are not prepared to read the filing deadlines entirely out of the statute, subjective ignorance, without more, cannot be a valid excuse." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 185 n. 4 (1st Cir.1989). Moreover, as the court stated in *Myles v. Schlesinger*, "[w]e do not think that complainants are entitled to waivers ... merely because they are 'not sure' that they have been discriminated against. This would give Title VII plaintiffs an advantage unknown in any other limitations area." 436 F.Supp. 8, 16 n. 9 (E.D.Pa.1976). I, therefore, find that Mr. Machado does not fit within the regulatory exception to the timely filing requirement.

■ In the alternative, plaintiff argues that equitable tolling saves his claim. The doctrine of equitable tolling which is applicable in discrimination suits against private defendants also applies in suits against the United States. *Irwin v. Veterans Administration*, —— U.S. ——, 111 S.Ct. 453, 457,

112 L.Ed.2d 435 (1990). As with the regulatory exception, the burden is on the plaintiff to prove that estoppel is warranted. *Rivera–Gomez v. de Castro*, 900 F.2d 1, 3 (1st Cir.1990).

■ The First Circuit Court of Appeals takes a narrow view of equitable tolling. *See Jensen v. Frank*, 912 F.2d 517, 521 (1st Cir.1990); *Mack*, 871 F.2d at 185.

> To qualify for an exception, a complainant must allege and prove, at the least, not only that he had no reason to be aware of his employer's improper motivation when the putative violation occurred, but also that the employer actively misled him and that he relied on the (mis)conduct to his detriment. *Jensen*, 912 F.2d at 521; *Earnhardt v. Puerto Rico*, 691 F.2d 69, 71 (1st Cir.1982).

Mr. Machado alleges that he was "actively misled" by Donna Kovalski, the then personnel manager for the post office. He claims that her deceit is evident from the fact that Mr. Rebeiro and Ms. Lynch were granted transfers some short time after he was told that there were no openings and that his request would be kept on file. The transfers of Mr. Rebeiro and Ms. Lynch do not show that there were openings at the time that Mr. Machado made his request. At most, the evidence proves that the transfers were granted around May 19, 1987, a month and a half after Mr. Machado's request was denied. Moreover, the transfers were not to take effect until June 6, 1987. This *could* suggest that Ms. Kovalski was less than honest when she promised to keep his request in mind. This Court, however, is not convinced that her possible lack of diligence rises to the level of "active" deceit envisioned by the First Circuit in *Jensen* and *Mack*. In fact, her remark could be viewed as nothing more than a casual reference, not necessarily an assurance.

Without the element of deceit, Mr. Machado's equitable tolling argument is very much like his claim for the application of the regulatory exception. However,

> [n]ot knowing every detail of a suspected plot cannot excuse a discharged employee for sleeping upon his rights. It can

ordinarily be assumed "that many facts will come to light after the date of an employee's termination, and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them." What matters is whether, when, and to what extent the plaintiff was on inquiry notice. *Jensen*, 912 F.2d at 521–22 (citations omitted).

Because Mr. Machado was placed on inquiry notice, as noted *supra*, his claim of equitable tolling must also fail. Therefore, his claim under Title VII for discriminatory treatment based on the denial of transfer is time barred.

*Retaliation Claim*

Originally, the plaintiff brought an additional claim alleging that the defendants retaliated against him for filing charges by denying him a promotion to an EEO Counselor/Investigator position. On the second day of trial, plaintiff advised the Court that he was dropping this charge. (T. 12.17.90 at p. 111) Plaintiff, however, addressed this charge in his post-trial brief. I will, therefore, discuss the claim summarily.

■ With regard to the retaliation claim, plaintiff admits that no EEO complaint was filed. Plaintiff, however, argues that jurisdiction over the original claim supports ancillary jurisdiction over the retaliation claim. *See Johnson v. General Electric*, 840 F.2d 132, 139 n. 8 (1st Cir.1988). *Johnson* is squarely on point. In both cases an EEO complaint was filed for a discrimination charge, but never filed for the later retaliation claim. In both cases the earlier discrimination charge was dismissed. The First Circuit in *Johnson* held that the retaliation claim was properly dismissed.

> No claim may be brought in federal court unless the prerequisite of administrative investigation has first been met. A complaint related to that brought before the EEOC, but which was not itself made the subject of a separate EEOC complaint, must reasonably be expected to have been within the scope of the EEOC's investigation in order to meet the jurisdictional prerequisite. The retaliation claim here could not have been expected

to be part of the scope of the EEOC's investigation growing out of appellant's earlier complaints, because plaintiff has not alleged that he even informed the EEOC of the alleged retaliation. *Id.* at 139 (citations omitted).

The Court of Appeals continued in a footnote: "We need not decide whether we would have 'ancillary' jurisdiction over the retaliation claim even in the absence of an EEOC complaint, because with the dismissal of the remaining counts, there is no longer any federal court case to which the retaliation claim might be ancillary." *Id.* at n. 8 (citations omitted).

Plaintiff evidently expected to rely on ancillary jurisdiction. Given the fact, however, that I have dismissed the plaintiff's original claim, the language of *Johnson* applies with full force to the case at hand. Plaintiff's retaliation claim must be dismissed.

### Merits

Although I have found that plaintiff's claims must be dismissed on timeliness grounds, I want to assure plaintiff that he did not lose because of some "mere technicality." I would find that he would lose on the merits as well.

Mr. Machado relies on the fact that he made out a prima facie case of discrimination according to the standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Under that standard plaintiff must show

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that after his rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.*

Plaintiff's strong emphasis on this threshold matter, however, is misguided.

Courts and litigants must bear in mind that the critical determination in any Title VII suit is whether the complainant has proven by a fair preponderance of the evidence that an impermissible consideration ... was a substantial motivating factor in the adverse employment decision. That principle requires the trial court at cases end ... to focus not on the artificial striations of the burden-shifting framework, but on "the district court's ultimate finding of discrimination *vel non.*" Courts should not unduly complicate this important inquiry "by applying legal rules which were devised to govern 'the basic allocation of burdens and order of proof' in deciding this ultimate question." Where ... the employer has come forward with its explanation, ... [t]he district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir.1990) (citations omitted).

In the instant case, I have heard all of the evidence. Ms. Kovalski, who made the actual decision, was not available to testify as to her reason for the denial. Mr. Belhumeur, her successor, testified, however, that the post office has a general policy of limiting transfers in order to foster stability. (T. 12.17.90 at p. 50–51) Moreover, he testified that Mr. Rebeiro and Ms. Lynch may have been given priority because their positions at the main post office were being eliminated. (T. 12.17.90 at p. 53–54)

■ Given this explanation, the fact that the Rebeiro/Lynch transfers took place over a month after Mr. Machado's request was denied and the fact that plaintiff offered no evidence of any animus against or mistreatment of him or any other Hispanic employee of the post office, I am not persuaded that he was the victim of intentional discrimination. Plaintiff has simply not shown by a "fair preponderance of the evidence" that he has a valid Title VII claim. I say this merely to put any questions to rest; this case must be dismissed on timeliness grounds. "Courts have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods.... This view is consistent with Congress's assumption, in adopting relatively short limitation periods, that employees will normal-

ly suspect discriminatory motives at the time" of the adverse employment decision. *Earnhardt*, 691 F.2d at 71. Plaintiff did not file in time and he has no adequate excuse. I, therefore, find for the defendants.

SO ORDERED.