Paula J. CIAFREI

v.

Lloyd BENTSEN, Secretary of the
Department of the Treasury.

Civ. A. No. 93–0387ML.

United States District Court,
D. Rhode Island.

Jan. 3, 1995.

Amy D. Drachman, Boston, MA, and Monique A. Roy, Charles S. Sokoloff, Inc., Woonsocket, RI, for plaintiff.

U.S. Atty. by Everett C. Sammartino, Asst. U.S. Atty., Providence, RI, for defendant.

## ORDER

LISI, District Judge.

The Findings and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on **December 7, 1994** in the above-captioned matter is accepted pursuant to Title 28 United States Code § 636(b)(1).

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

Presently before the court is the defendant's motion to dismiss or, in the alternative, for summary judgment. The plaintiff's complaint alleges that while she was employed by the Department of the Treasury, her superiors sexually discriminated against her and sexually harassed her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Rhode Island State Fair Employment Practices Act, R.I.Gen.Laws § 28–5–1 et seq. Because the parties presented matters outside the pleadings that were considered by the Court, pursuant to Fed.R.Civ.P. 12(b), this motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56.

The present matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c)(2). For the following reasons, I recommend that the defendant's motion for summary judgment be denied as to Counts I through V and granted as to Counts VI through IX of the plaintiff's complaint.

### Facts

Plaintiff, Paula J. Ciafrei ("Ciafrei"), was employed by the Internal Revenue Service ("IRS"), Providence District, Criminal Investigation Division ("CID"), as a secretary at pay grade GS–5. The IRS is an agency within the Department of the Treasury. In March, 1990, plaintiff felt her workload had increased dramatically as a result of a reconfiguration of the Providence Office, and from that date until August, 1992, she repeatedly requested a "desk audit." A desk audit is a procedure used by the IRS whereby an employee's work is reviewed to determine if he or she is performing responsibilities above those required for that individual's current grade, making the employee eligible for a promotion and/or a higher pay grade.

Plaintiff alleges that her superiors, Michael Dreiblatt ("Dreiblatt"), Chief of the Hartford CID, and Paul Varville ("Varville"), Branch Chief of the Hartford CID, had the supervisory power and control to award all promotions and pay raises within her office. Apparently, the Providence office of the CID was under the direction of the Hartford CID. Despite her numerous requests, plaintiff was repeatedly refused a desk audit for a variety of professed reasons not relevant here.

In March, 1992, plaintiff was informed by a co-worker that Dreiblatt and Varville had made disparaging remarks about plaintiff. Specifically, both men had referred to plaintiff as a "Big Harley Mama with tattoos all over her body." (Pl.'s Mem. in Supp. of Opp. to Mot. to Dismiss/Summ. J. ("Pl.'s Mem."), Ex. 11–13.) Dreiblatt also made comments to others stressing the importance of a job applicant's physical beauty and that the image he wanted in his office was of "young pretty girls." (Pl.'s Mem., Ex. 3 and 13.) These comments were never made in plain-

tiff's presence. In separate letters to plaintiff, dated August 19, 1992, both Dreiblatt and Varville "apologized for any remarks that [they] made which may have caused [plaintiff] embarrassment, ridicule, or demonstrated any intended or implied practice of harassment or discrimination on [their] part." (Pl.'s Mem., Ex. 14.)

Plaintiff asserts that in March, 1992, she did not connect her failure to get a desk audit with the offensive comments. She states that two events occurred in June, 1992 that triggered her awareness of the connection between her failure to receive a desk audit and the animus shared by Dreiblatt and Varville that was demonstrated by their comments.

On June 18, 1992, plaintiff received a written warning regarding her use of sick leave which was placed in her personnel file. Two other employees in plaintiff's office received only verbal counselling concerning the same issue. No written warning was issued to or placed in the personnel files of the other two.

On or about June 21, 1992, plaintiff was informed that Kerry Fortin and Diane Wotjusik were promoted from being Clerks at grade GS–4 to Branch Chief Secretary and Management Analyst, respectively, within the Hartford CID. Plaintiff stated at oral argument that she was attempting to get upgraded to both of these positions. Ms. Fortin and Ms. Wotjusik had worked at CID for less than six months when they were promoted, as compared to plaintiff's four years, but both were "slim and attractive, embodying traditional 'female' attributes." (Pl.'s Mem. at 6.)

On July 8, 1992, plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor regarding her allegations of sexual harassment and discrimination. (Def.'s Mem. in Supp. of Mot. to Dismiss/Summ.J. ("Def.'s Mem."), Ex. B.) On or about August 7, 1992, plaintiff received a Notice of Final Interview with EEO Counselor, giving her the right to file a complaint with the Equal Opportunity Program of the Department of the Treasury. (Def.'s Mem., Ex. B.) On or about August 8, 1992, plaintiff left the Providence office of the IRS to take a position at grade GS–6 with the Bureau of Alcohol, Tobacco and Firearms ("ATF") in Providence. As a result of her contact with the EEO Counselor, on or about August 17, 1992, the leave counselling memorandum was removed from plaintiff's personnel file at the IRS, and on August 19, 1992, Dreiblatt and Varville sent the aforementioned letters of apology. Thereafter, on August 21, 1992, plaintiff filed a formal complaint of discrimination with the Regional Complaints Center of the IRS, alleging sexual harassment and discrimination and unsuccessfully pursued the complaint through the agency appellate level.

The plaintiff now brings this often redundant nine count Complaint, alleging sexual harassment and discrimination. Counts I through V allege sexual discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., regarding the remarks made by Dreiblatt and Varville and plaintiff's failure to obtain a desk audit. Count VI alleges that the "Defendant Agency ... did conspire to deny Plaintiff Ciafrei her civil rights as defined in Title VII...." (Complaint, Count VI ¶ 3.) Count VII alleges that defendant's inclusion of the leave counselling memorandum in plaintiff's personnel file amounted to retaliation and disparate treatment in violation of Title VII. Count VIII declares that the defendant, through its EEO Counselor, violated Title VII by intimidating and attempting to intimidate plaintiff's witness, Diane Wotjusik, by referring to plaintiff's administrative complaint in the presence of Dreiblatt and Varville. Further, plaintiff contends that such action also violates her rights to confidentiality in her EEO complaint. Count IX avows that the defendant's actions amounted to sexual and employment harassment and discrimination in violation of the Rhode Island State Fair Employment Practices Act, R.I.Gen.Laws § 28–5–1 et seq.

*Discussion*

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, I must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Electric Co.,* 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

■■■■ Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed. R.Civ.P. 56(e)); *see Goldman,* 985 F.2d at 1116; *Lawrence,* 980 F.2d at 68; *Garside,* 895 F.2d at 48 ("[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading."

*Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' " *Mesnick,* 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman,* 985 F.2d at 1116 (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11).

## II. *Title VII Claims—Counts I through VIII*

### A. Exhaustion of Administrative Process

■■■■ Under Title VII, 42 U.S.C. § 2000e et seq., the federal government has waived its sovereign immunity to a limited extent. *Machado v. Frank,* 767 F.Supp. 416, 419 (D.R.I.1991) (citing 42 U.S.C. § 2000e–16). Title VII requires exhaustion of administrative remedies as a condition precedent to filing suit in federal court. *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990). The First Circuit has stated that " '[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded' even in sympathetic circumstances." *Id.* at 522 (quoting *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984)). "The law is clear that a federal employee filing a Title VII action must contact an EEO counselor within 30 days of the event that triggers his claim." *Jensen v. Frank,* 912 F.2d at 520 (citing 29 C.F.R. § 1613.214 [1]).

1. 29 C.F.R. § 1613.214 provides in pertinent part:

## B. Timeliness of Counts I through V

The defendant here contends that plaintiff's claims of discrimination and harassment, related to the comments of Dreiblatt and Varville and failure to obtain a desk audit, are time barred by the 30 day rule in 29 C.F.R. § 1613.214(a)(1)(i). Plaintiff counters that her claims are excepted from that rule, because she is alleging a continuing violation. Based on this continuing violation theory, the defendant's motion for summary judgment on Counts I through V should be denied.

### 1. Continuing Violation

■ "There are two kinds of continuing violations: serial violations and systematic violations." *Jensen v. Frank*, 912 F.2d at 522. A systematic violation occurs when a Title VII violation results from some continuing policy, itself illegal. *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 183 (1st Cir.1989). "[S]o long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint." *Jensen v. Frank*, 912 F.2d at 523. The plaintiff must demonstrate that the alleged Title VII violation was caused by an overarching policy directed toward all employees and not just himself or herself. *See Id.; Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d at 183. Plaintiff has not asserted that a systematic violation has occurred nor that such a broad based policy was the cause of her discrimination. Thus, it cannot provide the basis for her claim that a continuing violation occurred, making her action timely within the 30 day rule.

■ A serial violation occurs when a series of discriminatory acts transpire, each of which constitutes a separate wrong actionable under Title VII and all of which emanate from the same discriminatory animus. *Jensen v. Frank*, 912 F.2d at 523. The linchpin to making a continuing violation actionable is that the complainant must demonstrate that some discriminatory act took place during the limitation period. *Id.* "The mere effects or consequences of past discrimination, as opposed to independently actionable violations of Title VII, are insufficient to serve as the trigger of the limitations period." *Kassaye v. Bryant College*, 999 F.2d 603, 606 (1st Cir.1993).

■ Older decisions from the First Circuit interpreting continuing violations have inferred that while claims based on acts which have occurred within the limitation period remain actionable, those that occurred outside of the limitation period are foreclosed. *See Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984); *Cajigas v. Banco de Ponce*, 741 F.2d 464, 470 (1st Cir.1984); *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d at 183. Nevertheless, that Court's most recent interpretation of this doctrine represents the antipodes of these earlier cases. In *Kassaye v. Bryant College*, 999 F.2d 603, the court stated, without any detailed analysis, that "[i]f a Title VII violation is of a continuing nature, the charge of discrimination filed with the appropriate agency may be timely as to *all discriminatory acts encompassed by the violation* so long as the charge is filed during the life of the violation or within the statutory period ... which commences upon the violation's termination." *Id.* at 606 (emphasis added) (holding that plaintiff's serial violation theory failed because he had not demonstrated a discriminatory act within the limitations period). Despite the conflicting nature of these decisions, it is the most recent dictate that

(a) *Time limits.* (1) ... The agency may accept the complaint for processing in accordance with this subpart only if:

(i) The complainant brought to the attention of the [EEO] Counselor the matter causing him/her to believe he/she had been discriminated against within 30 days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the right to file a complaint.

Effective October 1, 1992, this 30 day rule was amended by 29 C.F.R. § 1614.105(a)(1) which now requires a federal employee to contact an EEO counselor within 45 days of the triggering event. As all the events complained of in this case occurred prior to October 1, 1992, the 30 day rule applies here. Nevertheless, application of the 45 day rule would not affect the analysis or conclusions of this Report and Recommendation.

binds this Court. Thus, if plaintiff properly establishes a serial violation with at least one discriminatory act occurring within the 30 days prior to her first contact with the EEO counselor on July 8, 1992, she may properly complain of all the discriminatory acts encompassed by that serial violation.

■ Plaintiff contends that her repeated denial of desk audits, the offensive remarks made by Dreiblatt and Varville and her being singled out to receive a written leave counselling memo all represent discriminatory acts comprising a serial violation. She further asserts that all of these acts resulted from Dreiblatt's and Varville's animosity towards her based on her size and appearance. The defendant does not dispute that any of these events occurred, nor does he dispute the discrimination nature of these acts for the purposes of this motion.[2] Therefore, at this juncture, plaintiff has properly established a series of discriminatory acts, each of which constitutes a separate wrong actionable under Title VII, and all of which emanate from the same discriminatory animus. *Jensen v. Frank*, 912 F.2d at 523.

The next question is whether plaintiff can demonstrate that a discriminatory act occurred within the 30 day limitation period set by 29 C.F.R. § 1613.214(a)(1)(i). Plaintiff contacted an EEO Counselor on July 8, 1992. Thus, she must show that a discriminatory act occurred within 30 days prior to that date or on or after June 8, 1992. 29 C.F.R. § 1613.214(a)(1)(i). Plaintiff points first to the promotions of Kerry Fortin and Diane Wotjusik on or about June 21, 1992. According to plaintiff, these women were promoted from within the Hartford CID to positions that the plaintiff was attempting to attain. They both had worked for CID for only six months, as compared to plaintiff's four years, but were "slim and attractive, embodying traditional 'female' attributes." (Pl.'s Mem. at 6.) As found hereinafter in part II.C., *infra* at 794–795, plaintiff did not raise these promotions as instances of discrimination while pursuing her administrative remedies

as is necessary to bring a claim based thereon in this court, *Brown v. General Services Administration*, 425 U.S. 820, 829–830, 96 S.Ct. 1961, 1966–67, 48 L.Ed.2d 402 (1976). It is not clear from the case law whether this fact now prevents her from pointing to these promotions as satisfying the requirement that some discriminatory act, claimed to be part of the serial violation, must occur within the limitation period. This question need not be resolved however, because plaintiff points to another incident of discrimination that satisfies this requirement of the continuing violation theory.

On June 18, 1992, a written sick leave warning was placed in plaintiff's personnel file while two other employees were only orally counselled on the same issue and received no written warning. Defendant does not dispute that this transpired. Therefore, it properly may be considered as a discriminatory act within the limitations period such that plaintiff's complaint is timely as to all the discriminatory acts encompassed by the continuing violation of Title VII that she alleges. Consequently, the defendant's motion for summary judgment as to Counts I through V of the Complaint should be denied.

### C. Counts VI and VIII

The defendant should be granted summary judgment on Counts VI and VIII. Title VII requires exhaustion of administrative remedies as a condition precedent to filing suit in federal court. *Jensen v. Frank*, 912 F.2d at 520. "No claim may be brought in federal court unless the prerequisite of administrative investigation has first been met. A complaint related to that brought before the [Equal Employment Opportunity Commission ("EEOC")], but which was not itself made the subject of a separate EEOC complaint, must reasonably be expected to have been within the scope of the EEOC's investigation in order to meet the jurisdictional prerequisite." *Machado v. Frank*, 767 F.Supp. at 421 (quoting *Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir.1988)).

---

**2.** The defendant's motion does not address the merits of plaintiff's Title VII claims, only the timeliness issue. Further, at oral argument, defendant stated for the purposes of this motion, all

plaintiff's factual assertions could be taken as true. Thus, at this stage the plaintiff's assertions that the defendant's acts were discriminatory are not in dispute.

In Count VI, the plaintiff alleges "[t]hat the Defendant Agency, by not affording the opportunity of position upgrade to Plaintiff Ciafrei, and promoting others within the same department during the same period of time, the Defendant Agency did conspire to deny Plaintiff Ciafrei of her civil rights as defined in Title VII . . . ." (Complaint, Count VI ¶ 3.) In Count VIII, the plaintiff alleges that the defendant, through its EEO Counselor, violated Title VII by intimidating and attempting to intimidate plaintiff's witness, Diane Wotjusik, by referring to plaintiff's administrative complaint in the presence of Dreiblatt and Varville. Further, plaintiff contends that such action also violates her rights to confidentiality in her EEO complaint.

 A review of the initial complaint plaintiff made to her EEO Counselor (Def.'s Mem., Ex. B), the formal complaint plaintiff filed with her EEO Counselor (Def.'s Mem., Ex. E), the decision of the Regional Complaint Center on that complaint (Def.'s Mem., Ex. G), and the decision of the EEOC, Office of Federal Operations, on plaintiff's appeal of the prior decision, shows no evidence that plaintiff raised the claims she asserts in Counts VI and VIII during the administrative process such that they were within the scope of the EEOC's investigation and determination of this matter. Therefore, these claims were not subjected to the appropriate administrative process as required before they may be brought in this Court. Moreover, in regards to Count VI, "[i]n order to establish a civil conspiracy, there must be evidence from which a party 'may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise.'" *Fleet National Bank v. Anchor Media*, 831 F.Supp. 16, 45 (D.R.I. 1993) (quoting *Thompson Trading, Ltd. v. Allied Breweries Overseas Trading, Ltd.*, 748 F.Supp. 936, 945 (D.R.I.1990) (quoting *Stubbs v. Taft*, 88 R.I. 462, 149 A.2d 706, 708–709 (1959))). Nothing in the record to date or alleged in the Complaint would demonstrate a specific agreement between any of the parties involved in this matter to discriminate against plaintiff. Therefore, to the extent plaintiff could get past the prerequisite of exhaustion of administrative remedies for her conspiracy claims, she has failed to put forth facts which meet the required elements of a conspiracy claim. Consequently, the defendant should be granted summary judgment on Counts VI and VIII of the plaintiff's complaint.

### D. Count VII

 The defendant should be granted summary judgment on Count VII of the Complaint as the claims therein are moot and thus no longer constitute a live case or controversy reviewable by this Court pursuant to Article III of the United States Constitution.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." . . . [A]s a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." But jurisdiction, properly acquired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will recur, and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying question of fact and law.

*County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted).

In *Jones v. McGovern*, 1989 WL 229381 (E.D.Cal.1989), the court applied the *Davis* test for mootness to a case factually similar to plaintiff's claims in Count VII. The court held that the plaintiff's claims were moot based upon its findings that

because plaintiff has retired from the federal service, the acts complained of will certainly not recur. Since plaintiff was in leave without pay status at the time of the suspension, he suffered no lost pay. *Since*

*the suspension notice ... was cancelled, and any references thereto were removed from plaintiff's personnel records, the effects of the alleged violation have been completely and irrevocably eradicated.*

*Id.* at *2 (emphasis added). For similar reasons, plaintiff's claims in Count VII that defendant's inclusion of the leave counselling memorandum in plaintiff's personnel file amounted to retaliation and disparate treatment are moot.

In this case, it is undisputed that the plaintiff no longer works for the IRS, so there is no chance that defendant can wrongfully place a written warning in her personnel file in the future. Further, the written warning was removed from plaintiff's personnel file and was not forwarded to plaintiff's subsequent employer, ATF. Lastly, the written sick leave memorandum was never used for any disciplinary purpose against plaintiff. Thus, any effects of the issuance of the sick leave warning have been eradicated by the defendant's actions. Therefore, the plaintiff's claims related to the sick leave warning are moot, and as a result, the defendant should be granted summary judgment on Count VII.

It should be noted that the present mootness of plaintiff's claims related to the sick leave warning has no bearing on the application of the continuing violation theory to her other Title VII claims, found in Counts I through V of the Complaint and addressed above in part II.B.1., *supra* at 793–794. As stated previously in part II.B.1., *supra* at 793–794, the defendant's singling out of the plaintiff to receive a written warning regarding sick leave was the discriminatory act within the 30 day limitations period of 29 C.F.R. § 1613.214(a)(1)(i) necessary to making her continuing violation claim valid. When the plaintiff contacted an EEO Counselor on July 8, 1992, the written warning had not been removed from her file, and consequently, her claim regarding the warning was not moot then. I see no reason why the defendant should be able to avoid the impact of the continuing violation doctrine as it has been interpreted by the First Circuit simply because remedial measures were taken regarding the latest violation only.

The First Circuit has stated that "[i]f a Title VII violation is of a continuing nature, the charge of discrimination filed with the appropriate agency may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period ... which commences upon the violation's termination." *Kassaye v. Bryant College,* 999 F.2d at 606. That is exactly what occurred in this case. Plaintiff contacted an EEO Counselor within thirty days of receiving the written sick leave warning which at that time was still in her personnel file allegedly in violation of Title VII. Therefore, her claims as to other discriminatory acts encompassed by the continuing violation are timely. Those claims are not now moot, and should not be barred simply because the triggering event of the continuing violation became moot after plaintiff complained to the EEO Counselor. To hold otherwise would be to allow putative violators of Title VII to avoid liability for continuing violations claims which are properly pursued by plaintiffs simply by remedying the most recent violation. Such a result would emasculate the First Circuit's interpretations of the continuing violation theory in *Kassaye* by voiding the very claims the doctrine seeks to preserve.

### III. *Count IX—State Statutory Claim*

 The defendant should be granted summary judgment on Count IX of the Complaint. Under the doctrine of sovereign immunity, a court lacks jurisdiction to decide claims against the United States unless the United States has consented to be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980). As stated earlier, under Title VII, the federal government has waived its sovereign immunity to a limited extent. *Machado v. Frank,* 767 F.Supp. at 419 (citing 42 U.S.C. § 2000e–16). However, Title VII is the exclusive remedy for the redress of federal employment discrimination, and preempts other discrimination laws. *Brown v. General Services Administration,* 425 U.S. at 829 and 835, 96 S.Ct. at 1966–67 and 1969. Count IX alleges that the defendant's actions

amounted to sexual and employment harassment and discrimination in violation of the Rhode Island State Fair Employment Practices Act, R.I.Gen.Laws § 28–5–1 et seq. This is clearly not a claim within the exclusive scheme of Title VII. Thus, it is not viable, and the defendant should be granted summary judgment thereon.

*Conclusion*

Based on the foregoing analysis, I recommend that the defendant's motion for summary judgment be denied as to Counts I through V of the plaintiff's complaint and granted as to Counts VI through IX.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[3] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[4]

---

**3.** Rule 32, Local Rules of Court,; Fed.R.Civ.P. 72(b).

**4.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).