Mark Z. KWATOWSKI, Plaintiff,

v.

Marvin T. RUNYON, United States Postmaster General, Defendant.

Civil Action No. 95–30064–MAP.

United States District Court, D. Massachusetts.

March 5, 1996.

Edward M. Pikula, Matroni, Dimauro, Liebel, Pikula & Desousa, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

PONSOR, District Judge.

This motion is hereby ALLOWED based upon the Magistrate Judge's Report and Recommendation, which this court has reviewed *de novo* and which it adopts. The plaintiff failed to exhaust administrative remedies and has failed to make out a *prima facie* case of retaliation.

So ordered.

*REPORT AND RECOMMENDATION OF COURT ON DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Docket No. 05)*

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

Defendant Marvin T. Runyon, Postmaster General of the United States (hereinafter

"the Government") has moved, pursuant to F.R.Civ.P. 12(b)(1) and 12(b)(6), to dismiss the instant employment discrimination complaint brought by Mark Z. Kwatowski ("Plaintiff"). In the alternative, the Government seeks summary judgment. Plaintiff opposes. The Government's motion has been referred to the Court for a report and recommendation pursuant to Rule 3 of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts. 28 U.S.C.A. § 636(b)(1)(B). For the reasons indicated below, the Court, construing the motion as one for summary judgment, recommends that the motion be allowed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In March of 1988, Plaintiff—who claims that he suffers from a service-connected disability in his right hand—applied for non-casual employment as a part-time flexible mailhandler at the United States Postal Service's General Mail Facility–Bulk Mail Center in Springfield, Massachusetts. Plaintiff had worked as a casual mailhandler for 90 days at the Springfield facility in 1986. In a letter dated April 22, 1988, the Postal Service notified Plaintiff that, based on his medical evaluation, he had been found medically unsuitable for employment as a part-time flexible mailhandler. The letter advised Plaintiff that he could request reconsideration of the determination within fifteen days.

In a letter dated May 3, 1988, Plaintiff did request reconsideration of the determination and claimed that he was being discriminated against for his alleged disability. Six weeks later, Plaintiff, having heard nothing further from the Postal Service, contacted one of its Human Resource Specialists, Marilou Ferraro. At that time, Ms. Ferraro informed Plaintiff that his request for reconsideration had been denied.

In June of 1993, Plaintiff again applied for the position of part-time flexible mailhandler. This time Plaintiff was cleared for duty in a pre-employment medical examination and was hired on June 13, 1993. Plaintiff attended a training session on June 15, 1993, which included information about Equal Employ-

ment Opportunity ("EEO") policies and procedures. See Defendant's Reply (Docket No. 13), Exhibit 1 (Declaration of Philip Mannila). In addition, according to the Government, the Postal Service, since at least 1988, has posted notices throughout the Springfield facility setting forth the procedures and time limits for contacting an EEO counselor with a claim of discrimination. According to an affidavit submitted by Eleanor C. McNerney, the EEO Counselor/Investigator for the Springfield facility, the notices are posted in the lobby, on the workroom floor and in the personnel office and an applicant for employment would have had to pass through the lobby to get to the personnel office. See Defendant's Memorandum of Law (Docket No. 05), Exhibit 2 (Declaration of Eleanor C. McNerney).

Ms. McNerney's affidavit to the contrary and despite the EEO training in June of 1993, Plaintiff claims he was first made aware of the EEO process in September of 1994 by his union representative. According to Plaintiff, he had no knowledge of EEO counseling signs posted anywhere in his place of employment until he read the Government's motion, whereupon he sought out the location of such signs. Plaintiff claims that his inspection of the Springfield facility revealed one sign located outside the superintendent's office—an allegedly inconspicuous area that Plaintiff claims was inaccessible to him before he was hired—and no such signs posted in the lobby. Plaintiff, however, is silent with respect to the explanation of EEO policies and procedures at the June, 1993 training.

On September 19, 1994, more than fifteen months after being hired, Plaintiff formally requested counseling pursuant to EEO guidelines. Plaintiff claimed that his employment file was "inexplicably shipped" to St. Louis and that he was never contacted for employment when he should have been. Plaintiff also indicated his understanding, as of September 29, 1994, that an individual with a more extensive hand injury than his had been found suitable for employment at the Springfield facility.

At some point, Plaintiff does not say when, Plaintiff alleges to have met with an EEO

counselor, Plaintiff does not say who, to discuss potential settlement of his claims. According to Plaintiff, the counselor offered to recommend to Postal Service management that Plaintiff's seniority date be adjusted to 1988, thus increasing his hourly pay. Plaintiff claims that when he asked whether he could think about the offer and talk with a lawyer, the counselor said he would have to make a decision right then as paperwork had to be processed and that he could not have any additional time to seek counsel.

Plaintiff filed a formal EEO complaint on December 13, 1994 in which he alleged disability discrimination when he was denied a position in 1988 despite his ability to fill the requirements of the job without accommodation. In another submission, Plaintiff claimed that his failure to be hired in 1988 was "very odd" considering his condition had not changed in 1993 when he was hired. In a letter dated December 28, 1994, the Postal Service issued a final decision which dismissed Plaintiff's complaint as "untimely" because he failed to contact an EEO counselor within thirty days of being rejected for employment in 1988.

Plaintiff filed the current action on March 31, 1995 claiming that he was discriminated against based on a disability. Plaintiff's three count complaint generally alleges violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* ("Rehab Act"). None of the counts specifically allege "retaliation." Plaintiff, however, introduces his complaint by stating that, in addition to asserting discrimination, he is also alleging "retaliation" by the Government. Finally, Plaintiff alludes to violations of the United States Constitution and "other federal laws."

The Government thereafter filed its motion to dismiss or for summary judgment. Plaintiff, after a number of extensions, filed an opposition. A hearing on the Government's motion was held on November 13, 1995.[1]

## III. STANDARD OF REVIEW

■ The Government has moved either for dismissal pursuant to Rules 12(b)(1) or 12(b)(6) or for summary judgment pursuant to Rule 56. Although the Government cites the rules governing dismissal, it has based its motion in part on materials outside the pleadings, namely, the declarations of Marilou Ferraro, Eleanor C. McNerney, and Philip Mannila. Plaintiff, as well, has relied on an affidavit that is not a part of the pleadings. Accordingly, the Court has treated the motion as one for summary judgment. See *Dominique v. Weld,* 73 F.3d 1156, 1158–59 (1st Cir.1996); and *Smith v. Massachusetts Dept. of Correction,* 936 F.2d 1390, 1394 (1st Cir.1991).

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See *Flanders & Medeiros, Inc. v. Bogosian,* 65 F.3d 198, 201 (1st Cir.1995); and *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994).

The Court must view the evidence as a whole, rather than in isolation. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts must be viewed in the light most favorable to the non-moving party, *Santiago–Ramirez v. Secretary of Dept. of Defense of U.S.,* 62 F.3d 445, 446 (1st Cir.1995), who bears the burden of placing at least one material fact into dispute after the moving

---

1. Plaintiff's counsel, without explanation, failed to attend the hearing. The Government does not assert, and the Court does not find, that counsel's failure to attend is enough, in and of itself, to sanction dismissal of the case. Unlike those cases where counsel's repeated deficiencies warrant dismissal, the record here does not reveal a persistent pattern of disobedience. *Morgan v. Massachusetts General Hosp.,* 901 F.2d 186, 195 (1st Cir.1990). In any event, although the Court heard argument from the Government's counsel only, it considered both parties' briefs.

party shows the absence of any disputed material fact. *Mendes,* 18 F.3d at 15 (discussing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). The factual dispute claimed by the non-moving party, however, must be "material", that is, it must be an issue that affects the outcome of the suit. *Collins v. Martella,* 17 F.3d 1, 3 n. 3 (1st Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). See also *Blackie v. Maine,* 75 F.3d 716, 720 (1st Cir.1996). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Nav. Co.,* 974 F.2d 221, 223 (1st Cir. 1992).

## V. DISCUSSION

The Government has offered three bases for judgment in its favor. It first argues that, insofar as Plaintiff's claims allege a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"), such claims must all be dismissed because of Plaintiff's failure to exhaust his administrative remedies. The Government also contends that any claim alleging "retaliation" cannot survive because Plaintiff is unable show that he suffered from an "adverse employment action." Finally, the Government argues that Plaintiff's constitutional claims and those based on "other federal laws" must fail for lack of a remedy. While the Court in fact finds that Plaintiff failed to exhaust his administrative remedies, thus enabling the Government to prevail on the Title VII counts, it also addresses, and ultimately recommends, rejecting Plaintiff's other claims in order to provide clarity to this litigation.

### A. TITLE VII

As a preliminary matter, it is necessary for the Court to discuss the connection between the ADA and the Rehab Act, on the one hand, and Title VII, on the other. The ADA and the Rehab Act are the specific statutes that Plaintiff claims were violated. Title VII

is the statute under which federal employees may bring claims of discrimination.

According to the ADA, it is unlawful for employers to discriminate against disabled individuals in the employment process. See 42 U.S.C. § 12112(a). The ADA, however, excludes the United States from the definition of "employer," see 42 U.S.C. §§ 12111(2), 12111(5)(B), and, as such, does not apply to employees of the United States Postal Service. The Rehab Act, on the other hand, applies to Postal Service employees with claims of disability discrimination. See 29 U.S.C. § 794. While the Rehab Act was amended in 1992 to incorporate certain standards provided in the ADA, the amendment occurred after the events upon which this complaint is based. In any case, both the ADA and the Rehab Act follow the procedures set forth in Title VII for bringing claims of discrimination. See 42 U.S.C. § 12117 (remedies for ADA violations) and 29 U.S.C. § 794a (remedies for Rehab Act violations).

Although Plaintiff does not specifically assert in his complaint that he is filing under Title VII, he indicates in the civil cover sheet attached to his complaint, as well as variously throughout his brief, that he is proceeding pursuant that statute. Accordingly, Plaintiff's ADA and Rehab Act claims must perforce be analyzed pursuant to Title VII.

### B. EXHAUSTION

■ The Government's first assertion is that Plaintiff has failed to exhaust his administrative remedies—a necessary prerequisite to the initiation of a lawsuit alleging discrimination in federal employment under Title VII. See *Brown v. General Services Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976); and *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990).[2] Exhaustion includes complying in a timely manner with the regulations governing the processing of complaints. *Jensen,* 912 F.2d at 520. Accordingly, a federal employee's failure to contact an EEO counselor within the period specified in the regulations—thirty days from

---

**2.** Exhaustion is also specifically required for disability discrimination claims arising under the Rehab Act. See *Gardner v. Morris,* 752 F.2d 1271, 1278 (8th Cir.1985); and *McGuinness v. U.S. Postal Service,* 744 F.2d 1318, 1320 (7th Cir.1984).

the date of the alleged discriminatory event or personnel action, see 29 C.F.R. § 1613.214(a)(1)(i)—bars a civil action based on that alleged discriminatory act. *Id.* See also *Cano v. U.S. Postal Service,* 755 F.2d 221, 223 (1st Cir.1985); and *Machado v. Frank,* 767 F.Supp. 416, 419 (D.R.I.1991).

■ There is no dispute in the present matter that the alleged discrimination occurred on April 22, 1988 when Plaintiff was notified that, based on the Government's medical evaluation, he would not be hired for a position as a part-time flexible mailhandler. The Government's decision not to hire Plaintiff clearly had a "degree of permanence" which should have triggered Plaintiff's awareness and duty to assert his rights. *Sabree v. United Broth. of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 402 (1st Cir.1990); and *Desrosiers v. Great Atlantic & Pacific Tea Co.,* 885 F.Supp. 308, 312 (D.Mass.1995). Accordingly, Plaintiff had until May 22, 1988 to seek EEO counseling and subsequently file an EEO complaint. Because such counseling was not sought until September of 1994, over six years later, Plaintiff was clearly beyond the thirty day limit.

The fact that Plaintiff did not strictly comply with the deadline of section 1613.214(a)(1)(i) does not, however, end the inquiry. First, Plaintiff contends that any one of a number of regulatory exceptions to the EEO deadline warrants a waiver in his case. See 29 C.F.R. § 1613.214(a)(4). Second, Plaintiff argues that either the doctrine of "equitable tolling" or the doctrine of "continuing discrimination" comes into play. As indicated below, however, each of these contentions must fail.

### 1. The Regulatory Exceptions

In his opposition, Plaintiff first implies that he is entitled to one of the three regulatory exceptions described in 29 C.F.R. § 1613.214(a)(4). According to that section, the agency will extend time limits: (i) if Plaintiff can show that he was not notified of the time limits and was not otherwise aware of them; (ii) if Plaintiff can demonstrate that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (iii) for other reasons considered sufficient by the agency. Plaintiff, however, has not and cannot demonstrate that he was eligible for any of these exceptions.

### a. Notice

■ Plaintiff cannot adequately claim for purposes of summary judgment that he was not notified of the time limits for pursuing his EEO complaint. In the context of discrimination cases, such as this, where a plaintiff is claiming excusable ignorance of EEO deadlines, the First Circuit has held that the Court should first determine whether the plaintiff had either actual or constructive knowledge of his rights. *Kale v. Combined Ins. Co. of America,* 861 F.2d 746, 753 (1st Cir.1988). Actual knowledge occurs where the plaintiff either learns or is told of his rights, even if he becomes only generally aware that there is a statute outlawing discrimination and providing relief. *Id.* (citing *DeBrunner v. Midway Equipment Co.,* 803 F.2d 950, 951–52 (8th Cir.1986)). Once the plaintiff "is 'generally aware of his legal right to obtain redress for that wrong ..., he possesses sufficient knowledge to enable him to vindicate his rights if he so desires.'" *Id.* (quoting *McClinton v. Alabama By–Products Corp.,* 743 F.2d 1483, 1486 (11th Cir.1984)). Constructive knowledge, on the other hand, is attributed to a plaintiff in situations where the defendant has fulfilled its statutory duty by conspicuously posting official EEO notices designed to inform the plaintiff of his rights. *Id.* (citing cases). In neither case, however, is the Government required to give that plaintiff personal notice of the applicable time limits. See *McKinney v. Dole,* 765 F.2d 1129, 1141 (D.C.Cir.1985); and *Wolfolk v. Rivera,* 729 F.2d 1114, 1117 (7th Cir.1984). See also *Taylor v. Dole,* No. 87–0652–Z, 1988 WL 96591, at *2 (D.Mass.1988).

■ Here, the Government has supplied the affidavit of Eleanor C. McNerney that EEO notices have, at least since 1988, been posted in the lobby, on the workroom floor and in the personnel office and that an applicant for employment, such as Plaintiff, would have had to pass through the lobby to get to the personnel office or any orientation ses-

sion at the Springfield facility. McNerney Declaration at 3. In the face of Ms. McNerney's affidavit, an allegation of non-observation "does not raise a material dispute as to whether the notices were posted that survives a summary judgment motion." *Kale*, 861 F.2d at 754. See also *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 412 (7th Cir.1984); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); and *Downie v. Electric Boat Division*, 504 F.Supp. 1082, 1086 (D.Conn.1980). In counterpoint, Plaintiff alleges that his recent inspection of the facility revealed no such signs posted in the lobby and only one sign located outside the superintendent's office. Plaintiff further alleges that the superintendent's office was off limits to Plaintiff prior to his employment with the Postal Service. Affidavit of Mark Kwatowski (Docket No. 11) at ¶¶ 4–6.

Plaintiff's allegations, however, are insufficient, for purposes here, to survive the Government's motion for summary judgment. Plaintiff was, in fact, hired by the Postal Service in June of 1993—some fifteen months prior to his seeking EEO counseling—and there is no genuine or material factual dispute that, at that time, he had access to the area outside of his supervisor's office where the EEO notices were posted. Thus, even were the Court to assume that Plaintiff had no actual or constructive notice of his EEO rights from 1988 to June of 1993, constructive, if not actual, knowledge of the applicable EEO deadlines can be attributed to Plaintiff at least as of June 13, 1993, the date of his hiring. Accordingly, he had until July 13, 1993 to seek EEO counseling with respect to his original 1988 concerns. Moreover, it is likely that Plaintiff had actual knowledge of the timelines on June 15, 1993

when he attended a training session at which EEO policies and procedures were discussed. As indicated, Plaintiff does not contest this assertion by the Government. Further, although the Government does not make this argument, it is possible that Plaintiff had knowledge, constructive or otherwise, as early as 1986 when he first worked for the Postal Service as a casual employee.[3]

### b. Circumstances Beyond His Control

 Second, Plaintiff cannot show that he "was prevented by circumstances beyond [his] control" from adhering to the proper deadlines. The question of whether a plaintiff is so prevented is "a fact specific inquiry." *Machado*, 767 F.Supp. at 420. As such,

[c]ourts have granted the exception when the necessary information was in the hands of the employer and inaccessible to the employee, for instance, in cases of hidden pay disparities. The exception should be denied when a specific situation should put the employee on notice that he might be discriminated against. In other words, once a discrete event occurs, such as the denial of a request, a plaintiff is on notice and has an obligation to investigate further on order to safeguard his rights.

*Id.* (citations and internal quotations omitted). Plaintiffs are not " 'entitled to waivers . . . merely because they are "not sure" that they have been discriminated against.' " *Id.* (quoting *Myles v. Schlesinger*, 436 F.Supp. 8, 16 n. 9 (E.D.Pa.1976)). Such a rule "would give Title VII plaintiffs an advantage unknown in any other limitations area." *Myles*, 436 F.Supp. at 16 n. 9; and *Machado*, 767 F.Supp. at 420.

 Here, a discrete event occurred—Plaintiff was notified on April 22, 1988 that, because of his medical condition, he would

---

**3.** It is unnecessary for the Court to dwell on Plaintiff's assertion that the sign which he located outside the superintendent's office "was not located in a *conspicuous* location." Kwatowski Affidavit at ¶ 6 (emphasis added). First, given that Plaintiff had access to the superintendent's office area after he was hired, it makes no difference to the foregoing analysis that that area was inconspicuous to a non-employed outsider. Second, it is unclear if what Plaintiff really means is that the area outside the superintendent's office was inconspicuous to an employed insider. If

so, this assertion is fatally bereft of any supporting facts. Plaintiff cannot survive a summary judgment motion "with 'unsupported allegations and speculations.' " *Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 14 (1st Cir.1994) (quoting *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988). See also *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (Plaintiff "may not rest upon mere allegations; [he] must set forth specific facts demonstrating that there is no genuine issue for trial.")

not be hired. This event obligated Plaintiff to investigate further and safeguard his rights. Moreover, the thirty day period ought not be waived from that time until September of 1994—when Plaintiff allegedly learned of new information to support his theory of discrimination—as Plaintiff unequivocally stated in May of 1988 that he believed he was "being discriminated against for no just reason." Unfortunately for Plaintiff, he did not pursue his EEO rights at that time.

### c. Other Reasons

■ Finally, the third exception—that Plaintiff's time limits may be waived "for other reasons considered sufficient by the agency"—does not come into play. In denying Plaintiff's EEO complaint on December 28, 1994 for being untimely, the Government implicitly, if not explicitly, rejected Plaintiff's ability to come under this exception. The bottom line is that the Court cannot excuse Plaintiff "for sleeping on his rights," *Jensen*, 912 F.2d at 521, whether the exercise of those rights is measured from 1988 or June of 1993.

### 2. Equitable Tolling

■ In the alternative, Plaintiff claims that the doctrine of "equitable tolling" saves his otherwise time-barred claim. See *Irwin v. Dept. of Veteran's Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). While federal employee suits under Title VII are subject to equitable tolling, *Nunnally v. MacCausland*, 996 F.2d 1 (1st Cir.1993), most courts, including the First Circuit, have taken a narrow view of the doctrine. See *Jensen*, 912 F.2d at 521; *Machado*, 767 F.Supp. at 421; and *Conroy v. Boston Edison Co.*, 758 F.Supp. 54, 60 (D.Mass.1991). In fact, according to the Supreme Court:

[f]ederal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin*, 498 U.S. at 96, 111 S.Ct. at 457–58 (citations and footnote omitted). Further, it is Plaintiff's burden to prove that such tolling is warranted. *Machado*, 767 F.Supp. at 421. *Rivera–Gomez v. de Castro*, 900 F.2d 1, 3 (1st Cir.1990).

■ Applying the case-by-case scrutiny advised by the First Circuit, see *Nunnally*, 996 F.2d at 4, Plaintiff here has failed to meet his burden. There are no facts to support any claim that Plaintiff was actively misled by the Postal Service about the reason he was not hired. Nor is there anything to indicate that Plaintiff was ignorant of judicial, let alone administrative, time limits due to some trick or inducement on the part of the Government. Plaintiff was plainly told in 1988 that, for medical reasons, he would not be hired. Moreover, even if the April 1988 letter was insufficient "to wind the limitations clock and start it ticking," *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 749 (1st Cir.1994), Plaintiff had knowledge of his rights at least in June of 1993 when he was hired and trained by the Postal Service. "[W]here the claimant [fails] to exercise due diligence in preserving [his] legal rights, courts are reluctant to apply principles of equitable tolling to extend a federal limitation." *de Casenave v. U.S.*, 991 F.2d 11, 13 (1st Cir.1993). See also *Kusek v. The Family Circle, Inc.*, 894 F.Supp. 522 (D.Mass.1995). The net result is that, like his attempt to achieve a regulatory exception, Plaintiff's equitable tolling claim is legally insufficient.

### 3. Continuing Discrimination

■ Plaintiff continues by alleging that his untimely claim should be rescued because the Postal Service engaged in what he calls "continuing discrimination." According to the First Circuit, the continuing discrimination theory saves an otherwise time-barred claim only if a plaintiff can show a "number of discriminatory acts emanating from the same discriminatory animus" and that at least one act occurred within the

limitations period. *Sabree,* 921 F.2d at 399; *Mack v. Great Atlantic & Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). See also *Desrosiers,* 885 F.Supp. at 311. As District Judge Michael A. Ponsor recently stated:

[t]he most important factor to be considered in determining whether a substantial relationship exists is whether the act outside the limitations period "has the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights." ... If the untimely act has the requisite degree of permanence, then it is not substantially related to the act which occurred within the limitations period and there can be no continuing violation.

*Desrosiers,* 885 F.Supp. at 312 (citations omitted). While the determination of whether a continuing violation exists is to made on a case by case basis, *Delaware v. Ricks,* 449 U.S. 250, 258 n. 9, 101 S.Ct. 498, 504 n. 9, 66 L.Ed.2d 431 (1980), a mere "thematic relationship" between the discrimination and the later retaliation and termination is insufficient to make out a continuing violation. *Desrosiers,* 885 F.Supp. at 313. See also *Jensen,* 912 F.2d at 522 (when the untimely discriminatory act is a "single, distinct act, unrepetitive in nature," the continuing violation doctrine will not apply).[4]

As indicated, here, as in *Desrosiers,* the Postal Service's decision not to hire Plaintiff had the requisite degree of permanence to trigger his awareness and duty to assert his rights. Plaintiff even acknowledges that he suspected discrimination in 1988. In addition, to the extent that Plaintiff relies on the alleged acts of an EEO counselor in handling his complaint—or, for that matter, the Postal Service's handling of his file—in 1994, such reliance is misplaced; those acts lack even a thematic relationship to the decision to not hire Plaintiff in 1988. Further, the Court finds no merit in any implication that the Government's failure to respond in writing to Plaintiff's 1988 request for reconsideration somehow proves a violation that continued into the limitations period. Indeed, the regulation cited by Plaintiff, 29 C.F.R.

§ 1613.214(a)(3), applies only to complaints that are brought after the complainant has sought counseling with an EEO counselor, something that Plaintiff did not do until December of 1994.

In sum, the Court finds that Plaintiff, by neglecting to assert his rights within the appropriate time periods, has failed to exhaust his administrative remedies. As such, the Court recommends that, to the extent the complaint alleges violations of Title VII, the ADA or the Rehab Act, the Government's motion be allowed.

## B. RETALIATION

While the Court's finding that Plaintiff has failed to exhaust his administrative remedies should end the matter, at least with regard to the Title VII claims, Plaintiff has vaguely alleged that he has suffered from retaliatory practices. As best as can be discerned, Plaintiff's retaliation claim pertains to his failed negotiations with the EEO counselor concerning the settlement of his complaint. Specifically, Plaintiff alleges that he was pressured into accepting the counselor's suggestion that the counselor try to increase Plaintiff's hourly rate of pay and seniority status, and that he was denied an opportunity to discuss the proposed settlement with an attorney.

Title VII prohibits retaliation by employers for resisting discrimination. See 42 U.S.C. § 2000e-3(a). In order to prevail on a claim of retaliation, a plaintiff must show: (1) that he was involved in a protected activity, (2) that he thereafter suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse action sufficient for the Court to infer a retaliatory motive. *Hoeppner v. Crotched Mountain Rehabilitation Center Inc.,* 31 F.3d 9, 14 (1st Cir.1994); *Hazel v. U.S. Postmaster General,* 7 F.3d 1, 3 (1st Cir.1993); *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990); and *Ramos v. Roche Products, Inc.,* 936 F.2d 43, 48 (1st Cir.), *cert. denied sub nom. Rossy*

---

4. A continuing violation may also be shown if there is a systemic policy of discrimination. *Jen-* *sen,* 912 F.2d at 523. No systemic policy, however, has been claimed in this case.

*v. Roche Products, Inc.,* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991).

The Government's motion focuses on the second prong. Relying solely on an unreported District of Columbia District case, *Mintzmyer v. Babbitt,* No. 93–0773–GK, 1995 WL 25342 (D.D.C.), *aff'd,* 72 F.3d 920, 1995 WL 761911 (D.C.Cir. Dec. 18, 1995), the Government argues that Plaintiff's allegations fail to state a claim of retaliation because they are not based on any adverse employment action. In *Mintzmyer,* the plaintiff's employer had decided in June of 1991 to reassign her. Approximately one month later, the plaintiff filed an informal administrative claim of discrimination. Thereafter, one of the plaintiff's supervisors talked with a friend of the plaintiff about the informal complaint and suggested to the friend that the plaintiff not discuss a proposed remedial action with the plaintiff's attorney. While the court viewed the supervisor's conversation with the plaintiff's friend as clearly improper, there was simply no evidence that, as a result of that conversation, the plaintiff *thereafter* suffered any adverse employment action. *Id.,* 1995 WL 25342, at *17.

Although the *Mintzmyer* decision is helpful, the scenario here is somewhat different. In this case, the focus is more properly placed on the third prong of the retaliation test. In other words, the issue here is whether there is a causal connection between Plaintiff's protected conduct—seeking EEO counseling—and the *subsequent* adverse actions taken against him—Defendant' decision not to settle his case, not to adjust his seniority and pay and to eventually dismiss his EEO complaint. See *Hoeppner,* 31 F.3d at 14 ("[b]ecause reporting sexual harassment is a protected activity . . . and because [plaintiff] was discharged after she reported the incidents . . . [t]he issue on appeal is whether . . . [plaintiff] failed to present sufficient evidence of a causal link . . .").

■ Unfortunately for Plaintiff, however, the causal link is just not present. As indicated, the Government dismissed Plaintiff's EEO complaint in its entirety and did not offer Plaintiff a settlement because Plaintiff's complaint was untimely, not because Plaintiff sought counseling. See Exhibit 1 to Plain-

tiff's Complaint (the Government's final decision on Plaintiff's EEO complaint, dated December 28, 1994). Indeed, even Plaintiff concedes that the counselor suggested that a settlement "may not be agreeable to management." Kwatowski Affidavit at ¶ 9. Accordingly, as the foregoing discussion makes amply clear, since the Government's rationale in dismissing Plaintiff's complaint was fully supportable and not a mere pretext for retaliation, summary judgment is appropriate.

The fact that Plaintiff fails to provide key facts concerning his counseling is further reason why his retaliation claim cannot survive summary judgment. According to the First Circuit,

> [e]ven in discriminatory discharge cases, where the plaintiff can rarely present direct, subjective evidence of an employer's actual motive, the plaintiff cannot survive summary judgment with unsupported allegations and speculations, but rather must point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus.

*Hoeppner,* 31 F.3d at 14 (citations and internal quotations omitted). See also *Lipsett,* 864 F.2d at 895; and *Oliver,* 846 F.2d at 103. Here, Plaintiff does not include the name of the counselor, the date of the counseling meeting or other testimony. Similarly, Plaintiff's speculation that the unnamed counselor had already obtained settlement authority from Postal Service management for the compromise purportedly offered at the unspecified meeting, see Kwatowski Affidavit at ¶ 11, fatally omits key details—e.g., from whom the counselor's authority was obtained as well as when and where that authority was given. In sum, to the extent that Plaintiff's complaint alleges a claim of retaliation, such claim must fail.

## D. PLAINTIFF'S REMAINING CLAIMS.

■ Finally, the Government proposes several reasons why Plaintiff's attempt to generally assert claims under the Constitution or "other federal laws" is misplaced. First, the Government claims that, to the

extent the constitutional claim is brought against Marvin T. Runyon in his official capacity as Postmaster General of the United States, it must fail because the Government has not waived its sovereign immunity for constitutional torts. See *Clemente v. United States,* 766 F.2d 1358, 1363 (9th Cir.1985) (citing cases), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986); see also *FDIC v. diStefano,* 839 F.Supp. 110, 122–123 (D.R.I.1993) (citing *Castro v. United States,* 775 F.2d 399, 405 (1st Cir.1985), and *Krohn v. United States,* 578 F.Supp. 1441, 1450 (D.Mass.1983).

■ Second, the Government argues that any constitutional claim against the Postmaster General in his individual capacity must be denied because there is no basis for implying a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). According to the Government, there are special factors here counselling against implying a *Bivens* cause of action, see *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988), namely, that Congress has in fact enacted a variety of statutes covering the area of federal employment relationships. See *Bush,* 462 U.S. at 388, 103 S.Ct. at 2416–2417; *Schweiker,* 487 U.S. at 427, 108 S.Ct. at 2469; and *Andrzejewski v. U.S. Postal Service,* 636 F.Supp. 758, 762 (E.D.Mo.1986). Thus, the Government claims, any additional *Bivens* remedy would disrupt this carefully crafted system.

■ Third, the Government argues that Plaintiff's allegations of violations of the Constitution and other federal laws must be dismissed because Title VII constitutes the exclusive remedy for claims of discrimination in federal employment. See *Brown,* 425 U.S. 820, 96 S.Ct. 1961; and *Garman v. U.S. Postal Service,* 509 F.Supp. 507, 513–14 (N.D.Ind.1981). See also *Clemente,* 766 F.2d at 1364 n. 7; *Gaj v. U.S. Postal Service,* 800 F.2d 64 (3d Cir.1986); and *Ethnic Employees of Library of Congress v. Boorstin,* 751 F.2d 1405, 1414 (D.C.Cir.1985). Similarly, courts have refused to allow a federal employee to bring a Constitutional action against individual defendants to redress claims of race discrimination because the appropriate cause of action for claims of employment discrimination is Title VII. See, e.g., *Pierce v. Runyon,* 857 F.Supp. 129, 131–32 (D.Mass.1994).

The Government's arguments are persuasive and Plaintiff spends little energy in opposition. As best as can be discerned by the Court, Plaintiff attempts to imply a *Bivens* remedy through the purported authority of *Neely v. Blumenthal,* 458 F.Supp. 945 (D.D.C.1978). However, while *Neely* held that *Brown* did not foreclose a *Bivens* remedy in all situations, a *Bivens* remedy would *not* be implied to redress conduct actionable under Title VII. Therefore, Neely provides no authority for Plaintiff's position.

■ In apparent recognition of the weakness his Constitutional and federal claims, Plaintiff asserts as his final argument that he should be allowed to amend his complaint and obtain additional discovery. Although the Court is mindful that motions to amend a complaint, as well as those seeking leave to pursue discovery, are often given freely, see *Spear v. Somers Sanitation Service, Inc.,* 162 F.R.D. 1 (D.Mass.1995), *Berthiaume v. Enterprise Rent–A–Car,* 164 F.R.D. 121 (D.Mass. Oct. 10, 1995), and *Commonwealth Aluminum Corp. v. Markowitz,* 164 F.R.D. 117 (D.Mass.1995), Plaintiff has offered no argument, other than his alleged need "to determine the identities of the responsible parties," why such remedies are warranted here. That justification, however, is simply insufficient to invoke F.R.Civ.P. 56(f) or allow Plaintiff to formally amend his complaint.

Accordingly, the Court recommends that, to the extent that Plaintiff's complaint, in addition to asserting violations of Title VII and retaliation, alleges a violation of the Constitution or other unnamed federal laws, the Government's motion should be allowed.

## VI. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion, construed

as a motion for summary judgment, be ALLOWED.[5]

Dated Feb. 1, 1996.

---

5. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); and *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983). See also *Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.